[No. 28513. Department One. December 3, 1941.]

HUBERT B. GILLINGHAM *et al., Appellants,* v. DORA S. PHELPS *et al., Respondents.*[1]

[1]Reported in 119 P. (2d) 914.

*B. J. Onstine* and *M. E. Mack,* for appellants.

*Glenn E. Cunningham,* for respondent Phelps.

MILLARD, J.—The purpose of this action, which was before us on appeal from judgment of dismissal, following sustaining of demurrer to the third amended supplemental complaint, in *Gillingham v. Phelps,* 5 Wn. (2d) 410, 105 P. (2d) 825, is to determine to whom should be awarded the proceeds of an insurance policy which covered property that was destroyed by fire.

Trial of the cause (on the same third amended supplemental complaint which was challenged by de-

murrer in *Gillingham v. Phelps, supra*) to the court sitting with a jury, resulted in verdict in favor of Dora S. Phelps. From judgment entered on the verdict against plaintiffs and the insurance company, motions for new trial and for judgment notwithstanding the verdict having been overruled, plaintiffs appealed. The insurance company did not appeal.

In *Gillingham v. Phelps,* 5 Wn. (2d) 410, 105 P. (2d) 825, the allegations of fact, together with the reasonable inferences therefrom, in the complaint, which were admitted by the demurrer to be true, were as follows:

September 22, 1936, the owner of a certain six-story building in the city of Spokane leased the top floor of that building to Dora S. Phelps, for a period ending August 31, 1939, where Mrs. Phelps operated a pinochle club. March 9, 1938, Mrs. Phelps assigned the lease and transferred to Lawrence J. and Frank S. Fiman, under a conditional sales contract, the personal property which was used in operation of the club. The Fimans later returned the property to Mrs. Phelps, who continued to operate the club under her lease until February 7, 1939, when she entered into an oral agreement with Hubert B. Gillingham (who, some time prior to that date, purchased the six-story building in which Mrs. Phelps' pinochle club was located) to sell to Gillingham the property in question in consideration of the cancellation of her indebtedness for back rent in the amount of $767.36 and payment to her by Gillingham of $350 in cash. The sale contract was to be later reduced to writing and a bill of sale given to the purchasers. Mrs. Phelps was the beneficiary of a fire insurance policy, in which the Gillinghams were not mentioned.

The Gillinghams went into possession of the property and operated the club for a period of twenty-three

days, when the property was destroyed by fire. The contract and bill of sale had not been executed, nor had the consideration of $350 been paid, when the fire occurred.

An action was instituted by Hubert B. Gillingham and wife against Dora S. Phelps, the two Fimans, the assignee of the two Fimans, and the fire insurance company, to recover the insurance money in excess of $350, which amount was due from the Gillinghams to Mrs. Phelps as part of the purchase price of the club property. Mrs. Phelps, whose demurrer to the complaint was sustained, claimed, as owner of the insured property, the entire sum of two thousand dollars insurance money. On appeal of the plaintiffs, we reversed the judgment of dismissal and remanded the cause with direction to the trial court to overrule the demurrer.

The first error assigned is the granting, over objection of appellants, of a jury trial on request of respondent Phelps. Counsel for appellants argue that we held in *Gillingham v. Phelps, supra,* that Mrs. Phelps would be considered trustee of a constructive trust for the appellants in disposition of the proceeds of the insurance policy; hence, the action is one in equity and not triable to a jury.

The assignment is without substantial merit. The legal effect of the demurrer in *Gillingham v. Phelps, supra,* that appellants Gillingham owned the property at the time of the fire, was an admission of the truth of the allegation. The admission made by the demurrer was made merely for testing the sufficiency of the complaint and was binding upon respondent demurrant only in so far as the ruling upon the demurrer is concerned. Our remand of the cause with direction to the trial court to overrule the demurrer was a determination that the complaint was good as against

the objection that it did not state a cause of action. When the trial court, after remand, overruled the demurrer and respondent pleaded over, any admission by the demurrer was removed by the answer denying the allegations admitted. In the second place, the substantial issues—questions of fact—were properly triable by a jury, and, if it developed that there was an equitable issue involved in the action, disposition of that issue could be made by the court.

The risk of loss rested upon the person who had the property in the goods when they were destroyed. Rem. Rev. Stat., § 5836-22 [P. C. § 6227-22]. The basic issue in the cause was whether appellants or respondent had the property in the goods at the time of the fire.

Even if, as alleged by appellants, a contract of sale were made between appellants and Mrs. Phelps February 7, 1939, the question whether the parties intended title to pass on that date or at the time the written documents were to be executed and delivered, was one of fact.

"Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case." Rem. Rev. Stat., § 5836-18 [P. C. § 6227-18], subd. 1 & 2.

Rem. Rev. Stat., § 5836-19 [P. C. § 6227-19], Rule 4, subd. 2, provides that where, in pursuance of a contract to sell, the seller delivers the goods to the buyer he is presumed to have unconditionally appropriated the goods to the contract.

Rem. Rev. Stat., § 5836-20 [P. C. § 6227-20], subd. 1, provides that where one contracts to sell specific goods,

such seller, by the terms of the contract, may reserve the property in the goods until certain conditions have been fulfilled, notwithstanding the delivery of the goods to the buyer.

In the determination of the question whether the parties intended that the property in the subject matter of the oral agreement pass at the time of the oral agreement or at the time of the execution and delivery of the written contract and bill of sale, let us examine the uniform sales act. One section of that statute provides that, under a contract to sell specific goods, the property in the goods is transferred to the buyer at such time as the parties intend it to be transferred. Rem. Rev. Stat., § 5836-18 [P. C. § 6227-18]. If the seller, pursuant to the contract to sell, delivers the goods to the buyer, the presumption obtains, in absence of proof of a different intention, that the property in the subject matter of the contract passed to the buyer at the time of delivery of the goods. Rem. Rev. Stat., § 5836-19 [P. C. § 6227-19]. The right of property in the subject matter of the contract may be reserved by the seller until certain conditions have been fulfilled, notwithstanding the delivery of that subject matter to the buyer.

When the cause was before us in *Gillingham v. Phelps, supra,* no evidence of intention of the parties was in the action; the appeal was from judgment of dismissal following sustaining of demurrer to the complaint. The presumption under that state of facts that title had passed under the provisions of Rem. Rev. Stat., § 5836-19, was operative. When the cause was remanded and came to trial a second time, two questions of fact were presented: (1) Was a contract of sale made? (2) If a contract of sale was made, did the parties intend that the property in the goods should pass to appellants when the latter were given possession

of the property and prior to execution and delivery of the written agreement?

On or about February 7, 1939, the respondent, who was indebted to appellants for rental under her lease of the sixth floor of the building in which she operated a pinochle club, entered into negotiations with appellants which culminated in surrender by respondent to appellants of possession of the club. March 2, 1939, the club property was destroyed by fire. Respondent was protected by a fire insurance policy to which appellants were strangers, and no notice of the transaction between respondent and appellants was given to the insurance company. Respondent made proofs of loss and settled with the insurance company.

March 18, 1939, before the proceeds of the insurance were paid to respondent, appellants instituted an action against respondent for rent accrued and to accrue under their lease and for expenses incurred by appellants in operation of the club. The prayer of appellants' complaint was for judgment for the amount claimed to be due and for an adjudication that the indebtedness constituted a lien on all of the property in the pinochle club at the time of the fire, under the provisions of their lease, and extended to the proceeds of the insurance. Appellants also notified the insurance company of their landlord's lien and served a writ of garnishment upon the insurance company, which then placed the proceeds of the insurance policy in the custody of the court.

After a number of amendments, the appellants stood on their third amended supplemental complaint, in which they alleged an agreement between themselves and respondent February 7, 1939, for the purchase of the pinochle club in consideration of the release of all of the indebtedness owing by the respondent to them at that time, the cancellation of the lease on the premises

occupied by the club, and the payment by appellants to respondent of $350 in cash. Their claim of ownership of the club (which is not consistent with their former position described above) at that time and as such owners entitled to the proceeds of the insurance policy, is based upon the foregoing allegations. That is, the appellants based their rights upon the negotiations between themselves and respondent which culminated in a change of possession of the pinochle club February 7th, at which time they contend that a sale was consummated and title passed to appellants.

Respondent Phelps pleaded, substantially, as a defense, that the negotiations between her and appellants did not result in a contract of sale; that she did not, and appellants did not, intend the property in the goods to pass until execution and delivery of the contract and bill of sale; and that appellants obtained possession of the property by false representations that they would pay the cash consideration and consummate the proposed sale promptly.

The questions of fact presented by the complaint and answer are foreclosed by the jury's verdict, which is sustained by ample evidence.

Error is next assigned on the admission of certain evidence. That evidence was competent; if true, it established the fact of appellants' intention to gain possession of respondent's property, but to not consummate the contract of sale unless, through operation of the club without financial risk to themselves, they derived profits from the business which would warrant consummation.

The testimony of which appellants complain consists of statements and admissions by Mr. Gillingham to a number of persons to the effect that he was making a deal with respondent for the pinochle club, but that he did not intend to pay her anything therefor or to

put up any money; that, if through operation of the club profits sufficient to pay for same were not acquired, respondent would be "out of luck." There is other testimony that, a day or so prior to the fire, Mr. Gillingham stated that no deal had been closed, and that he intended to keep things moving along until respondent did business the way he wanted it. Other evidence to which appellants objected was that relating to Mr. Gillingham's connection with the club which took over the business of respondent. It was offered for the purpose of showing that appellants did not enter into a present contract but were pursuing a course of conduct the purpose of which was to postpone consummation of the purchase until appellants ascertained certain facts.

The testimony concerning Mr. Gillingham's connection with a club was impeaching in character. Proper foundation for impeachment was laid in cross-examination of Mr. Gillingham, who denied his connection with the club. All of the testimony of which appellants complain was competent, as it established, if true, that appellants never intended to take the property in the goods unless they were convinced through operation of the club they would profit thereby. This is supported by their action, commenced before the proceeds of insurance had been paid by insurance company on proofs made by Mrs. Phelps, to recover accrued rental and rental to accrue under the lease, as well as expenses incurred by appellants in operation of the club, which claim aggregated thirteen hundred dollars.

██ The court charged the jury that it was their duty to determine, as a question of fact, if they believed from a preponderance of the evidence that an oral agreement for sale of the goods by respondent Phelps to appellants was made, whether it was the intention of the parties that title to the goods should pass at the time of the making of the oral agreement or that

title should not pass until the instruments were executed and delivered. The court further instructed the jury that when the title to personal property passes from the seller to the buyer is always a question of intention of the parties, provided that intention can be ascertained, although possession has been delivered; that, unless a different intention appeared from the evidence in the case, the jury "must conclude that title passed to the purchaser at the time the oral agreement was made, regardless of whether the purchase price was paid or the property had passed into the possession of the purchaser."

Appellants' contention that the foregoing instructions were prejudicially erroneous, is without merit. The instructions are practically in the language of the provisions of the uniform sales act, cited and paraphrased above, applicable to the facts in the case at bar.

██ Appellants argue that, by reason of the statutory (Rem. Rev. Stat., § 5836-19) presumption that property in goods passes when the contract is made and in pursuance to that contract the goods are delivered to the buyer, the burden of proof was imposed upon respondent Phelps to rebut that presumption; therefore, the trial court erred in refusing to give requested instruction that the burden of proof, whether the contract of sale was not to be binding until bill of sale and contract were executed and delivered, was upon respondent Phelps.

The burden of proving their case never shifted from appellants. The term "burden of proof" has two distinct meanings: (1) the establishing of the truth of a given issue by the required quantity of evidence, and (2) the duty of producing evidence to make a *prima facie* case. A statutory presumption making a *prima facie* case does not shift the burden of proof or require the adversary to prove the negative by the preponder-

ance of the evidence; it merely requires the submission of the issue to the jury to determine the preponderance of the evidence, required throughout of the party asserting the affirmative of the issue. *State v. Rouw,* 156 Wash. 198, 286 Pac. 81.

"The term 'burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a prima facie case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails. This burden of proof never shifts during the course of a trial, but remains with him to the end." 10 R. C. L. 897.

The judgment is affirmed.

ROBINSON, C. J., MAIN, STEINERT, and DRIVER, JJ., concur.