[No. 11529-4-I.   Division One.   January 21, 1985.]

ROGER E. GIRARD, ET AL, *Respondents,* v. MICHAEL H. MYERS, ET AL, *Appellants.*

*Cartano, Botzer, Larson & Birkholz, Frank W. Birkholz,* and *Carlyn J. Steiner,* for appellants.

*Van Valin & Watts, Charles E. Watts,* and *John A. Mc-Gary,* for respondents.

SCHOLFIELD, A.C.J.—Michael Myers, his wife, and the Myers Company (Myers), defendants below, appeal the trial court's declaratory judgment that their Revocable Trust and Exclusive Right of Resale Agreement (Trust and Resale Agreement) with Roger Girard and Property G Joint Venture (Girard) is null and void. Girard and Property G Joint Venture cross–appeal the trial court's dismissal of their Consumer Protection Act claim. We affirm.

## FACTS

Michael Myers is the president and sole stockholder of the Myers Company, the Myers Corporation, and the Talisman Corporation, all Washington corporations. He is a licensed real estate salesperson and at all times material was employed by the Myers Company. In November 1974,

Myers, individually, obtained an earnest money agreement for the acquisition of a 290–acre parcel of real estate lying north and south of I–90 in Issaquah. This property is generally known as the Pickering Farm. The earnest money agreement divided the property into seven parcels. Myers obtained investor groups to purchase each parcel and each purchase was closed in Myers' name as trustee and contract purchaser. Myers, himself, purchased only 13.2 acres.

Myers required each investor to sign a Trust and Resale Agreement. This document was prepared by Myers and the Myers Company. Myers would not allow any investor group to purchase a parcel without signing the agreement.

Part I of the Trust and Resale Agreement, entitled "Revocable Trust", provided that the purchaser of a parcel of the Pickering property (settlor) appointed the Myers Company trustee to hold legal title to the property on behalf of the settlor. Part I also provided that the trust was revocable by the settlor at any time.

Part II of the Trust and Resale Agreement, entitled "Exclusive Right of Resale Agreement", provided, in part, as follows:

(1) EXCLUSIVE SALES AGENT: Owner appoints agent [Myers] to act as exclusive sales agent for the real property of owner described in Schedule A attached hereto and incorporated herein by this reference (property).

(2) OFFERS: Agent shall transmit to owner any offers for the purchase of the property which have been obtained by or made to agent. Owner shall not be required to accept any offers, except that at the time of any invocation by owner of any right to cancel this agreement, owner must transmit to agent the minimum price and stated conditions for and under which owner will agree to sell the property. The agent shall have the right to sell the property or purchase it for the set price during the time of notice and the effective date of the cancellation.

(3) JOINT VENTURE: If owner determines to develop the property on a joint venture basis, agent shall have the right to be exclusive agent to negotiate the joint venture agreement and shall be entitled to eleven percent of the

owner's interest in the joint venture, or at the owner's option, an eleven percent commission based on an MAI appraisal of the property as the effective date of the joint venture.

(4) TERM AND TERMINATION: The term of this agreement shall be for a period of ten years from the date of its execution. This agreement shall terminate at the option of the owner one year[1] after owner has given notice to agent to sell at an MIA [*sic*] appraised value, on conditions and terms generally acceptable to prudent investors in this type of real estate, or to obtain a joint venture as provided in paragraph 3. Agent shall have the right to purchase the property at the same price and on the same terms as owner is willing to sell to a third party, or to become the joint venturer on terms acceptable to owner.

(5) COMMISSION: Owner shall pay to agent as consideration for acting as agent a commission of eleven percent of the sale price of the property, or shall reduce the price, if sold to agent, by eleven percent of the sale price.

(6) EXCLUSIVE AGREEMENT: This agreement constitutes agent as the exclusive sales agent for the property. If the property is sold by owner or any other agent during the term of this agreement, agent shall be entitled to a commission of eleven percent of the sale price. Agent shall also be entitled to eleven percent of the proceeds of any condemnation of the property and agent shall have the exclusive right to represent owner in the negotiation or litigation of such condemnation proceedings.

Exhibit 72.

Parcel III–A of the Pickering property, consisting of 34 acres, was purchased by Philip Butler and Frank Kline in June 1975. Myers required Butler and Kline to sign the Trust and Resale Agreement hereinabove set forth. After holding the property for approximately 1 year, Butler and Kline decided to sell. In January 1977, Roger Girard and others formed a general partnership named Property G Joint Venture to purchase the north one–half of parcel III–

---

[1]Part II, section (4) of the Trust and Resale Agreement between the Myers Company and Roger Girard was amended to provide that the agreement would terminate at the option of the owner *2 years* after the owner had given notice. Exhibit 12.

A. Myers advised Girard he would not be "allowed" to purchase the property unless Girard executed the Trust and Resale Agreement. Myers asserted that under his agreement with Butler and Kline, he had a right of first refusal on the property. Girard assented to Myers' demand and signed the Trust and Resale Agreement on January 27, 1977. On February 2, 1977, the transaction between Butler and Kline and Girard was closed with Myers receiving a 10 percent commission.

In late 1977, Myers started acquiring properties using the Talisman Corporation as managing partner of limited partnerships made up of investors. From late 1977 through August 1978, three limited partnerships with the Talisman Corporation as managing general partner and Michael Myers, individually, as general partner, acquired the 51 acres adjacent to, and surrounding on the south and east sides, the 17 acres that had been acquired by Girard. Michael Myers had a substantial ownership interest in each of the limited partnerships. In 1975, Michael Myers, individually, purchased a 13.2–acre parcel which was near Girard's parcel. The trial court found that the 51 acres and the 13.2–acre parcel owned personally by Myers, were actually or potentially competitive with Girard's property in the marketplace.

In May 1978, Girard sold 40,000 square feet of the 17 acres and paid Myers a commission of 11 percent on the transaction.

On or about April 2, 1979, Girard advised Myers that he considered the Trust and Resale Agreement to be invalid and not binding. In September 1980, Girard commenced a declaratory judgment action to have the Trust and Resale Agreement declared invalid and unenforceable.

On or about March 19, 1981, following discussions that commenced a year or so earlier, Girard and John Sato of the Sato Corporation entered into a limited partnership agreement for the development of the remaining 16–plus acres of the Girard property, with Girard as limited partner contributing the property to the partnership and John Sato

and/or the Sato Corporation to be the managing general partner. Sato made the 1979 and 1980 contract payments for Girard.

Myers answered the complaint and counterclaimed, seeking judgment for a commission of 11 percent on the value of the property at the time it was transferred to the Girard/Sato limited partnership and also seeking general damages from Girard on a theory of failure of consideration arising out of Girard's failure to comply with the provisions of the Trust and Resale Agreement.

The trial court declared the Trust and Resale Agreement void and unenforceable and dismissed Myers' counterclaims, holding that:

1. The Trust and Resale Agreement was void because it constituted an unreasonable restraint on alienation.

2. The commission and price discount provisions were void because Myers' ownership and financial interests in the 13.2–acre and 51–acre parcels created an impermissible potential conflict of interest.

3. The provisions purporting to grant Myers a right of first refusal were unenforceable because vague.

4. Use of the Trust and Resale Agreement did not violate the Consumer Protection Act because it was a private form of contract not in general use by the real estate business and therefore did not impact the public interest.

5. Use of the Trust and Resale Agreement did not violate the Consumer Protection Act because the sale of the property to Girard and the extraction of exclusive sales agency rights constituted a single transaction rather than an illegal tying agreement.

6. Girard's claim that the transaction violated the Securities Act of Washington did not need to be resolved.

## RESTRAINT ON ALIENATION

Myers contends that section (4) of part II of the Trust and Resale Agreement constitutes a preemptive right (right of first refusal) to purchase at a price and on terms equal to a third party offer the owner is willing to accept. He argues

that such a preemptive right is valid and enforceable, citing *Robroy Land Co. v. Prather*, 95 Wn.2d 66, 622 P.2d 367 (1980) and Restatement of Property § 413(1) (1944).[2]

In *Robroy*, the court upheld the validity of a preemptive right that entitled the holder to match a third party offer for the property within 60 days. The court found that such a preemptive right did not affect the marketability of the property. The court found that the owner of the property was free to sell either to the holder of the preemptive right or to the third party offering to buy. The court quoted with approval from Restatement of Property § 413, comment *c*, at 2443 (1944):

> The interference with alienation present in a re-quirement that a designated person be afforded a rea-sonable opportunity to meet any offer received from a third person by an owner desirous of selling is so slight that the major policies furthered by freedom of alien-ation are not infringed to a degree which requires invalidation. Under these circumstances, the owner has two potential buyers at the same price and is assured of a reasonably prompt culmination of the sale. Such restraints are, therefore, valid.

*Robroy*, at 70–71.

Restatement of Property § 413(1) provides that a restraint on alienation that gives the holder only the right to meet a third party offer "with reasonable expedition" is

---

[2]Restatement of Property § 413 (1944) provides:

"(1) A promissory restraint or forfeiture restraint on the alienation of a legal estate in land which is in the form of a provision that the owner of the estate shall not sell the same without first offering to a designated person the opportunity to meet, with reasonable expedition, any offer received, is valid, unless it violates the rule against perpetuities.

"(2) A promissory restraint or forfeiture restraint on the alienation of a legal estate in land which is in the form of a provision

"(a) that the owner of the estate shall not sell the same without first offering to sell to some designated person, either at a fixed price, or at a percent-age of the price offered by another person, or

"(b) that the owner of the estate shall pay a certain percentage of the sale price to some designated person,

"is valid if, and only if, the restraint is valid under the rules stated in §§ 406–411."

valid. Restatement of Property § 413(2), on the other hand, provides that a restraint on alienation that gives the holder the right to purchase at a fixed price, to purchase at a percentage of the price offered by a third party, or to receive a percentage of the sale price is valid only if the restraint is valid under the rules stated in sections 406 through 411.

The preemptive right in this case states no time limit within which the holder must act and sets forth no procedural requirements that the holder must follow to exercise the right. Such a preemptive right permits the holder to frustrate a sale to a third party simply by stalling and then threatening litigation when a controversy develops. In addition, the preemptive right cannot be considered separately from the exclusive sales agency provisions also contained in the Trust and Resale Agreement. Under those provisions, Myers receives an 11 percent commission, whether or not he in fact procures the purchaser, and receives an 11 percent reduction in the purchase price if he purchases the property. Although the obligation to pay an 11 percent commission or to pay an 11 percent price discount does not prevent a sale, it discourages a sale because the owner does not receive full value for the property.

We find that the preemptive right in this case is distinguishable from the preemptive right considered in *Robroy* because it sets no time limit within which the holder must act, it contains no procedural requirements that the holder must follow to exercise the right and it interferes with alienation by requiring an onerous commission or reduction in price. We also find that the commission and price reduction provisions require that this preemptive right be analyzed under Restatement of Property § 413(2)(b), rather than § 413(1).

A preemptive right falling within Restatement of Property § 413(2)(b) must be valid under the rules stated in sections 406 through 411. Section 406 applies to restraints on the alienation of indefeasible possessory estates in fee simple. In comment *a* to section 406, at page 2394, the authors state, in part:

To uphold restraints on the alienation of such estates it must appear that the objective sought to be accomplished by the imposition of the restraint is of sufficient social importance to outweigh the evils which flow from interfering with the power of alienation or that the curtailment of the power of alienation is so slight that no social danger is involved.

Restatement of Property § 406(c) requires that a restraint on the alienation of a fee simple estate be "reasonable under the circumstances". Two factors to be considered in determining whether a restraint is reasonable are whether the person imposing the restraint has some interest in the land that he or she seeks to protect by enforcement of the restraint and whether enforcement accomplishes a worthwhile purpose.[3]

We agree with the trial court that the restraints imposed upon alienation by the Trust and Resale Agreement in this case are not reasonable or justified under the guidelines outlined in the Restatement of Property. Myers has no interest in the Girard property. The provisions in the Trust

---

[3]Comment *i* to Restatement of Property § 406 provides, in part, as follows: "The following factors, when found to be present, tend to support the conclusion that the restraint is reasonable:

"1. the one imposing the restraint has some interest in land which he is seeking to protect by the enforcement of the restraint;

"2. the restraint is limited in duration;

"3. the enforcement of the restraint accomplishes a worthwhile purpose;

"4. the type of conveyances prohibited are ones not likely to be employed to any substantial degree by the one restrained;

"5. the number of persons to whom alienation is prohibited is small (see Comments *j* and *k*);

"6. the one upon whom the restraint is imposed is a charity.

"The following factors, when found to be present, tend to support the conclusion that the restraint is unreasonable:

"1. the restraint is capricious;

"2. the restraint is imposed for spite or malice;

"3. the one imposing the restraint has no interest in land that is benefited by the enforcement of the restraint;

"4. the restraint is unlimited in duration;

"5. the number of persons to whom alienation is prohibited is large (see Comments *j* and *k*)."

and Resale Agreement imposing restraints on alienation serve no purpose other than to give Myers further profits on each resale and further investment opportunities at a bargaining advantage. This does not meet the requirement that the restraint be for the purpose of protecting an interest in land or accomplishing a worthwhile purpose.

We conclude that this right of first refusal is an unlawful restraint on alienation because it: sets no time limit within which the holder must act, sets forth no procedural requirements that the holder must follow to exercise the right, requires that Myers be paid an 11 percent commission on resale of the property, whether or not he procures the purchaser, requires that Myers receive an 11 percent discount in the purchase price if he purchases the property himself, protects no interest of Myers in the property and would accomplish no worthwhile purpose if enforced. We hold that part II of the Trust and Resale Agreement is void and unenforceable.

## CONFLICT OF INTEREST

The trial court entered findings that the 51 acres acquired by three limited partnerships, with Myers as general partner in each, and the 13.2–acre parcel individually acquired by Myers were "actually or potentially competitive" with the Girard property. Finding of fact 24. The court concluded that this situation created an impermissible conflict of interest, which invalidated Myers' claim for a commission on the Girard/Sato transaction.

Myers argues that his interest in and ownership of property adjacent to the Girard parcel did not violate his fiduciary duties as selling agent "because Girard knew before he purchased the property or signed the agreement that Myers both owned property and intended to remain involved in the coordinated development of the Pickering Farms parcels."[4] He also argues that the Trust and Resale Agreement made the following disclosure:

---

[4]Brief of Appellant, at 30–31.

(8) DISCLOSURE: Agent is in the business of selling and purchasing real property for its own account and as agent for other principals, disclosed and undisclosed. Owner has employed agent for the specific purposes set forth herein and no other relationship of a legal, quasi–legal or of a fiduciary nature exists between the parties.

The trial court made no specific finding of fact on the subject of Girard's knowledge of Myers' conflicting interest prior to signing the Trust and Resale Agreement. The record would support a finding Girard knew of Myers' ownership of the 13.2 acres. However, the record is clear that Myers acquired the 51 acres through the three limited partnerships after Girard signed the Trust and Resale Agreement.

█ Myers does not assign error to the findings of fact in which the trial court found that the properties Myers owned or had substantial interest in were actually or potentially competitive with the Girard parcel. Thus, a conflict of interest is an established fact in this case. The only issue is whether Myers made a full and timely disclosure to Girard of all material facts regarding the conflict:

We begin with the fundamental rule that a real estate agent has the duty to exercise the utmost good faith and fidelity toward his principal in all matters falling within the scope of his employment. Such agent must exercise reasonable care, skill, and judgment in securing the best bargain possible, and must scrupulously avoid representing interests antagonistic to that of the principal without the explicit and fully informed consent of the principal. Further, the agent must make a full, fair, and timely disclosure to the principal of all facts within the agent's knowledge which are, or may be, material to the transaction and which might affect the principal's rights and interests or influence his actions. *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 437 P.2d 897 (1968). Consequently, a dual agency relationship is permissible "when both parties have full knowledge of the facts and consent thereto." *Brandt v. Koepnick*, 2 Wn. App. 671, 674, 469 P.2d 189 (1970). Before such consent can be held to exist, clear and express disclosure of the dual agency relation and the material circum-

stances that may influence the consent to the dual agency must be made. *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.,* 82 Wn.2d 714, 718, 513 P.2d 282 (1973); *Koller v. Belote,* 12 Wn. App. 194, 528 P.2d 1000 (1974). *Meerdink v. Krieger,* 15 Wn. App. 540, 544, 550 P.2d 42 (1976).

A full and timely disclosure of the facts regarding the 51 acres could not have been made before Girard signed the Trust and Resale Agreement because those properties were not acquired until after the Trust and Resale Agreement was signed. If Myers desired to show that he had made a full disclosure to Girard when the 51 acres were acquired and that he had given Girard the option of either consenting to the conflict of interest or terminating the Trust and Resale Agreement, Myers had the burden of producing evidence on that issue. Once the conflict of interest was established, Myers had the burden of producing evidence that the conflict did not invalidate his right to a commission. *See Gillingham v. Phelps,* 11 Wn.2d 492, 502, 119 P.2d 914 (1941); *Lee & Eastes, Inc. v. Continental Carriers, Ltd.,* 44 Wn.2d 28, 34, 265 P.2d 257 (1953).

The record does not support Myers' argument that all material facts giving rise to the conflict of interest were fully disclosed to Girard. Myers' conflict was unusual in this case because he could profit personally by arranging sales of properties in which he had a personal interest and, at the same time, he could frustrate a sale by Girard to a prospective purchaser interested in both properties, through his claimed right of first refusal and an 11 percent discount. The findings of the trial court on the conflict issue are supported by substantial evidence. We conclude that Myers' claim for a commission should be denied because Myers breached his fiduciary duty as a selling agent.

## CONSUMER PROTECTION ACT

Girard asserted in the trial court that his claim was covered by the Consumer Protection Act, RCW 19.86, thus entitling him to attorney's fees. The trial court denied this

claim on the grounds that the Trust and Resale Agreement was a private agreement in unique form and therefore did not impact the general public. The court also was influenced by the extensive discontinuance of the Trust and Resale Agreement by Myers, which negated its potential for repetition. We affirm the trial court's dismissal of Girard's Consumer Protection Act claim; however, we do so on grounds different from those relied upon by the trial court. *See Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984).

RCW 19.86.020 declares unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. RCW 19.86.090 provides in pertinent part as follows:

> Any person who is injured in his business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: . . .

Girard's complaint did not seek an injunction, but, rather, sought primarily a declaration that the Trust and Resale Agreement was void and unenforceable. Although the complaint contained a very general prayer for damages, there was no proof of damages because Girard's property had substantially increased in value by the time of trial.

Although Girard alleged in conclusory terms a violation of the Consumer Protection Act, his action is not cognizable under RCW 19.86. The Consumer Protection Act does not authorize an action for declaratory judgment and does not provide a remedy for a person who fails to prove actual damages.

Girard also contends that his transaction with Sato did not constitute a sale or joint venture under the Trust and Resale Agreement, that the Trust and Resale Agreement was void for lack of consideration, that the Trust and

Resale Agreement constituted an illegal tying agreement under the Consumer Protection Act and that the Trust and Resale Agreement was a sale of a security in violation of the Securities Act of Washington. Due to our disposition of the issues of unlawful restraint on alienation of property, conflict of interest and the Consumer Protection Act, it is not necessary to address these remaining issues.

Judgment affirmed.

SWANSON and WILLIAMS, JJ., concur.