**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| FALCON PROPERTIES LLC, a Washington limited liability company, and ALEXEY SOKOLOV and JANE DOE SOKOLOV, husband and wife, | ) ) ) ) | No. 80128-7-I (consolidated with No. 80185-6-I) |
| Appellants/Cross-Respondents, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| BOWFITS 1308 LLC, a Washington limited liability company, | ) ) ) ) | |
| Respondent/Cross-Appellant. | ) ) ) | PUBLISHED OPINION |

MANN, C.J. — Falcon Properties LLC (Falcon) and Alexey Sokolov appeal the trial court's judgment awarding damages and attorney fees to Bowfits 1308 LLC (Bowfits) arising out of the sale of a residential apartment building. Falcon and Sokolov argue that the trial court erred in disgorging to Bowfits a $75,000 commission that Falcon paid to Sokolov after the sale. Falcon also argues that the trial court erred in its calculation of actual damages. Finally, Falcon argues that the award of attorney fees was excessive. We agree on the issue of disgorgement and reverse. We affirm on all other grounds.

Bowfits cross appeals and argues that the trial court erred by determining attorney fees were not awardable against Sokolov individually. Bowfits also argues that the trial court erred in concluding that Falcon did not violate the Consumer Protection Act (CPA), chapter 19.86 RCW. We remand to the trial court to reexamine its award of attorney fees after our reversal of the order requiring disgorgement of Sokolov's commission. We otherwise affirm.

Affirmed in part, reversed in part, and remanded for determination of attorney fees consistent with this opinion.

## I.   BACKGROUND

This dispute involves a contract for sale of a 13-unit apartment building located at 1308 12th Avenue South, in Seattle (the Property). Falcon is a Seattle-based, multi-family portfolio and property management company. Sokolov is Falcon's managing member and a real estate broker. Falcon purchased the Property in 2015 for $2,075,000.

Bowfits consists of 10 members who jointly invested for the sole purpose of purchasing an income producing property. Walter Boos is Bowfits's general partner. John Odegard, president of Seattle Funding Group, and Don Burdick, a corporate executive and licensed attorney, are also members of Bowfits.

Falcon originally listed the Property for sale at $4,250,000, with a net operating income of $185,581 and a capitalization (cap) rate[1] of 4.37 percent. Falcon then removed the listing from the market, subsequently reintroducing it with a lowered price

_____

[1] A cap rate is a way of analyzing the current performance of a property by dividing its net income by its purchase price, thus yielding a percentage.

of $3,747,500, and an increased cap rate of 4.94 percent. Bowfits, interested in a property with a cap rate of approximately 5 percent, was satisfied with the Property's cap rate upon relisting.

On July 6, 2017, Bowfits and Falcon reached mutual acceptance on a purchase and sale agreement (the Agreement) for the Property. Bowfits diligently retained a licensed inspector to investigate the physical condition of the Property. Pursuant to the Agreement, Falcon was required to provide Bowfits with various documents relating to the income of the Property.[2] Falcon was also required to deliver to Bowfits updated versions of this information no later than two days before the scheduled closing date, certifying the information as true and accurate.

After receiving the initial documents required by the Agreement, Bowfits noticed discrepancies in the financial history of the Property. First, Bowfits observed that the rent roll and profit and loss statement did not match. Falcon explained that it sent both a current and budgeted rent roll. Second, Bowfits found that pages of leases were missing. Third, Bowfits asked follow-up questions about the tenants and requested receipts and bank statements showing that the Property was achieving the advertised $20,000 per month income. Falcon refused to substantiate the Property's income, claiming it as confidential. Finally, after the failed inquiry, Bowfits requested a certified rent roll. On October 24, 2017, Falcon prepared and signed a certified rent roll.

---

[2] Paragraph 5(a) of the Agreement states that "Seller shall make available for inspection by Buyer and its agents . . . all documents in Seller's possession or control relating to the ownership [and] operation . . . of the Property . . . and including . . . leases and other agreements relating to all or a portion of the Property and a suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees."

Through the certified rent roll, Falcon represented and warranted identities of tenants, monthly rents, current lease terms, and expenses. Relying on the certified rent roll, Bowfits and Falcon closed on the purchase of the property for $3,747,500. Falcon paid Sokolov a $75,000 commission for the sale.

After closing, Bowfits discovered multiple material misrepresentations made by Falcon on the certified rent roll. Falcon also made other misrepresentations designed to mislead and reassure Bowfits. The fiscal misrepresentations lowered the advertised cap rate from 4.94 percent to 4.27 percent.

On January 17, 2018, Bowfits filed a complaint against Falcon for breach of contract, fraudulent misrepresentation, negligent misrepresentation, violation of the CPA, and the disgorgement of Sokolov's commission. Bowfits offered two alternative calculations of damages. The first was for a $266,532.33 lost investment value based on the discrepancy between the cap rate as advertised and the cap rate once Bowfits discovered the false claims in the certified rent roll. The second was for the actual damages determined from the false income claims in the certified rent roll compared to the Property's actual income.

Following a bench trial, the trial court entered written findings of fact and conclusions of law. The court found in favor of Bowfits on its claims for breach of contract, fraudulent misrepresentation, negligent misrepresentation, and disgorgement of the commission paid to Sokolov, but found that Bowfits could not establish its CPA claim.

The trial court awarded Bowfits actual damages of $13,400 (with adjustments) related to the misrepresentations of the current rents and leases. Finding the testimony

-4-

of Bowfits's expert witness unpersuasive, the trial court refused to award the larger damages based on the differences in cap rates. The court also found Bowfits's claim for damages for lost time speculative and declined to award damages.

The trial court also awarded judgment against Sokolov in the amount of $75,000 for the disgorgement of the commission he earned from Falcon. The court justified disgorging Sokolov's commission because of his violation of his statutory duties as a realtor and subsequent unjust enrichment from receiving the commission.

Based on an attorney fees provision in the Agreement, the trial court determined that Bowfits was the prevailing party. The court awarded Bowfits $118,594.75 in attorney fees and $6,466.05 in litigation costs.

Falcon appeals, Bowfits cross appeals.

## II. ANALYSIS

A. Disgorgement of Sokolov's Commission

Falcon argues first that the trial court erred when it disgorged Sokolov's $75,000 commission. The trial court justified the disgorgement of Sokolov's commission on two theories: (1) Sokolov's violation of his duties as a real estate broker under RCW 18.86.030, and (2) in order to avoid unjust enrichment. Falcon contends that tort and compensatory damages, not restitution damages, are proper redress for a violation of RCW 18.86.030. Falcon further contends that Bowfits cannot establish the elements of unjust enrichment. We agree.

We review the legal standard of recovery de novo. Young v. Young, 164 Wn.2d 477, 483, 191 P.2d 1258 (2008).

The trial court's reliance on RCW 18.86.030 as a basis for disgorging Sokolov's commission to Bowfits was erroneous for two reasons. First, the trial court was correct that a real estate broker has a statutory duty under RCW 18.86.030(1)(b) and (d) to deal honestly and in good faith, and to disclose all existing material facts known. But that duty is owed only to the parties "to whom the broker renders real estate brokerage . . . duties." RCW 18.86.030(1). Sokolov was Falcon's broker and provided real estate brokerage duties to Falcon, not Bowfits. Sokolov did not owe a duty to Bowfits under RCW 18.86.030(1).

Second, even if Sokolov did owe a statutory duty to Bowfits under RCW 18.86.030(1), the vehicle for recovery for a breach of statutory duties under chapter 18.86 is through common law tort. Jackowski v. Borchelt, 174 Wn.2d 720, 735, 178 P.3d 1100 (2010). In this case, Bowfits sought and recovered damages for Falcon's fraudulent misrepresentation. Damages for fraudulent misrepresentation are limited to the losses proximately caused by the defendant's fraud. McRae v. Bolstad, 32 Wn. App. 173, 178, 646 P.2d 771 (1982). The trial court awarded Bowfits its actual damages of $13,400 for Falcon's misrepresentations. Bowfits was not entitled to a disgorgement of Sokolov's commission for fraudulent misrepresentation.

At trial, Bowfits justified its claim for disgorgement of Sokolov's commission based on its claimed loss of $50,000 for lost time investment opportunity, and $25,000 of CPA treble damages. The trial court, however, rejected both of these claims. On appeal, Bowfits relies on several cases that authorize the disgorgement of real estate commissions or attorney fees for fraudulent or unethical conduct. The cases Bowfits cites do not support disgorgement in this situation. Instead, the cited cases involve

disgorgement of commissions or fees paid by the injured party where the recipient of the commission or fees acted fraudulently or unethically. Bowfits cites, and we can find no case, where commissions or fees are disgorged to a third party where there was no privity between the third party and the recipient of the commission or fees. See, e.g., Cogan v. Kidder, Mathews & Segner, Inc., 97 Wn.2d 658, 648 P.2d 875 (1982) (disgorging a commission paid to a listing broker by a buyer where the broker failed to identify a conflict of interest with the seller); Girard v. Meyers, 39 Wn. App. 577, 694 P.2d 678 (1985) (disgorging a commission paid to a vendor by a property owner); Eriks v. Denver, 118 Wn.2d 451, 824 P.2d 1207 (1992) (disgorging attorney fees paid by a client to his attorney).

Disgorgement of real estate commissions and attorney fees is not an appropriate remedy where the damaged party was not in privity with the recipient of the commission or fees. The Agreement for the sale of the Property was between Bowfits and Falcon. Falcon paid a commission to its agent Sokolov after the sale. Because there was no privity between Bowfits and Sokolov, the trial court erred in ordering the disgorgement of Sokolov's commission to Bowfits.[3] We reverse the trial court's order disgorging Sokolov's $75,000 commission to Bowfits.

---

[3] Disgorgement is also not appropriate under a standalone theory of unjust enrichment. Three elements must be established for unjust enrichment: (1) there must be a benefit conferred on one party by another, (2) the party receiving the benefit must have an appreciation or knowledge of the benefit, and (3) the receiving party must accept or retain the benefit under circumstances to make it inequitable for the receiving party to retain the benefit without paying its value. Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991) (quoting BLACK'S LAW DICTIONARY 1535-36 (6th ed. 1990)).

Bowfits's unjust enrichment claim fails on the first element. Falcon paid Sokolov's commission, not Bowfits's. Therefore, Bowfits did not confer the $75,000 benefit to Sokolov.

B. <u>Bowfits's Damages</u>

Falcon argues that the court erred in its determination of Bowfits's damage award. We disagree.

We will not disturb the trial court's determination of damages unless it is outside the range of substantial evidence in the record, shocks the conscience of the court, or was the unmistakable result of passion or prejudice. <u>Bingaman v. Grays Harbor Cmty. Hosp.</u>, 103 Wn.2d 831, 835, 699 P.2d 1230 (1985).

The trial court carefully assessed potential calculations of damages and selected the one it found most appropriate. The court rejected Bowfits's argument that it suffered $276,269 in damages because of the difference between the advertised and actual cap rates. In doing so, the court found the testimony of Bowfits's expert witness unpersuasive. The trial court also rejected Bowfits's assertion that it experienced damages as a result of a loss of time as entirely speculative. Instead, the trial court calculated damages for each unit individually based on the fabricated income and actual income, for a final determination of $13,400. Because the trial court's findings are supported by substantial evidence we will not disturb them on appeal.

C. <u>Attorney Fee Award to Bowfits</u>

Falcon argues that the trial court erred in awarding Bowfits attorney fees and incorrectly determined the amount of fees awarded. We disagree in part.[4]

We apply a two-part standard of review to a trial court's award or denial of attorney fees: (1) we review de novo whether there is a legal basis for awarding

---

[4] In its cross appeal, Bowfits argues that the trial court erred in not also awarding attorney fees against Sokolov individually. But as the trial court correctly concluded, the Agreement was between Falcon and Bowfits. There was no basis for an award of attorney fees against Sokolov.

attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fees award for an abuse of discretion. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

Courts may award attorney fees only when authorized by a contract provision, a statute, or a recognized ground in equity. King County v. Vinci Constr. Grands Projects/Parsons RCI/Frontier-Kemper, JV, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017). Here, the trial court recognized the legal basis for awarding Bowfits its attorney fees was in the Agreement. This Agreement provides that "[i]f Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." This is a proper legal basis for awarding attorney fees.

Trial courts have broad discretion when determining the amount of attorney fees awarded. Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). In calculating these fees, the trial court must supply findings of fact and conclusions of law sufficient to permit this court to determine why the trial court awarded the amount in question. SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 144, 311 P.3d 40 (2014).

The trial court also properly exercised its discretion in determining the amount of attorney fees to award. The trial court properly applied the lodestar method and determined that the rates charged and time spent were both reasonable. While Bowfits requested fees based on hourly rates slightly higher than actually charged, the court limited its fees to the rates actually charged. The court then explained its rationale for reducing fees for time spent briefing and researching Bowfits's unsuccessful CPA claim

and that many of the hours spent were due in part to unreasonable delays by Sokolov. Finally, the trial court concluded that the breach of contract, fraudulent misrepresentation, and disgorgement of the commission paid to Sokolov all "arose out of the same transaction" and "are intertwined and interrelated."

There is no basis for us to conclude that the trial court abused its discretion in its award of attorney fees and costs. However, because we reverse the trial court's decision disgorging Sokolov's commission, we must remand to the trial court to consider whether an adjustment of its attorney fees award is necessary.

D. Bowfits's Consumer Protection Act Claims

Bowfits argues that the trial court erred in finding that Falcon did not violate the CPA. We disagree.

We review for substantial evidence whether a defendant in a CPA case did or did not engage in certain conduct. Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 559 P.2d 1271 (1979). "Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the declared premise." Brown v. Superior Underwriters, 30 Wn. App. 303, 306, 632 P.2d 887 (1980). "The determination of whether a particular statute applies to a factual situation is a conclusion of law, and not a finding of fact." Fisher v. World-Wide Trophy Outfitters, Ltd., 15 Wn. App. 742, 743-44, 551 P.2d 1398 (1976). Thus, whether a set of actions gives rise to a CPA claim is a question of law. Keyes v. Bollinger, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982).

To establish a claim under the CPA, a plaintiff must prove five elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, and (5) causation. Sing v.

John L. Scott, Inc., 134 Wn.2d 24, 30, 948 P.2d 816 (1997) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784, 719 P.2d 531 (1986)). The trial court acknowledged, and it is uncontested, that Bowfits proved all but the public interest element. The public interest element is therefore the only one at issue.

To establish the public interest element of a CPA claim, the court considers: "(1) whether the acts were committed in the course of defendant's business, (2) whether the defendant advertised to the public, (3) whether the defendant actively solicited the plaintiff, and (4) whether the parties occupied unequal bargaining positions. Bloor v. Fritz, 143 Wn. App. 718, 737, 180 P.3d 805 (2008) (citing Svendsen v. Stock, 143 Wn.2d 546, 553, 23 P.3d 455 (2001)). "These factors show a likelihood that additional plaintiffs have been or will be injured in the same manner." Bloor, 143 Wn. App. at 737. No single factor is dispositive. Rather, courts weigh all factors to determine if the plaintiffs have established the public interest element of the CPA. Bloor, 143 Wn. App. at 737.

The trial court found that: (1) Falcon's acts were committed in the course of its business, (2) although some of Falcon's listings were to the public, Falcon marketed the Property specifically toward real estate investors, (3) Falcon did not actively solicit Bowfits, and (4) the parties were not in unequal bargaining positions. Substantial evidence supports each of these findings.

Falcon is a property management company that has bought and sold multiple properties. It is within the course of its business to sell the Property to Bowfits. Falcon also specifically marketed the Property with cap rates meant to attract investors and

listed the multi-million dollar complex on commercial real estate sites. The Property was intended for investors and not the general public. The record does not contain evidence that Falcon solicited Bowfits. Finally, Bowfits consisted of several savvy real estate investors. It was in an equal bargaining position with Falcon.

Based on the trial court's findings, Bowfits failed to establish the public interest element of the CPA. Although Falcon's acts were committed during the course of its business, the final three factors weighed to establish the element are in its favor. Because Falcon was advertising the Property to investors, not targeting Bowfits, and the two were in equal bargaining positions, it is unlikely that additional plaintiffs will be injured in the same manner.

We review a party's conduct relating to a CPA claim for substantial evidence, and the application of that conduct as a matter of law. Substantial evidence supports Falcon's listing not being public, not soliciting Bowfits, and the two parties being in equal bargaining positions. Taken in whole, these findings do not satisfy the public element interest of the CPA and, therefore, the necessary elements for a CPA claim.

E. Attorney Fees on Appeal

Both Bowfits and Falcon request attorney fees on appeal under RAP 18.1. Under RAP 18.1, a party may request reasonable attorney fees on appeal if an applicable law grants the party the right to recover. Both parties request attorney fees based on the attorney fees provision in the Agreement. We generally recognize a provision in a contract allowing attorney fees to include fees on appeal as well as at trial. Edmundson v. Bank of America, 194 Wn. App. 920, 932-33, 378 P.3d 272 (2016). Because both parties prevailed in part, we decline to award attorney fees on appeal.

-12-

Affirmed in part, reversed in part, and remanded for determination of attorney fees consistent with this opinion.

_Mann, C.J._

WE CONCUR:

_Chun, J._          _Dwyer, J._