Leonard J. Supple, J.
The issues here were submitted to the court for decision by stipulation of the parties dated March 16, 1955 on the ‘ ‘ facts as established by the pleadings ’ ’. A supple *111 mental stipulation of the defendant dated May 18, 1955 concedes that deeds later submitted to the court by the plaintiffs are the deeds in issue given by the defendant to the plaintiffs and may be received in evidence and considered by the court in its determination of the issues.
The plaintiffs are members of the defendant Croton Park Colony, Inc., a domestic membership corporation, and accepted conveyances of real property from the defendant executed and delivered under the authority of section 22 of the Membership Corporations Law of the State of New York. The deeds effecting the conveyances contained, among others, the following provisions : “ Subject Also to the following restrictions and covenants which shall run with the land and which shall apply only to the above described premises and may be changed at any time by the party of the first part (grantor) herein, whenever desired by it, it being distinctly understood that the said restrictions being imposed herein are for the benefit of the Croton Park Colony, Inc.
“ An owner of each piece of property located in the Croton Park Colony must be a member of the Association, the Croton Park Colony, Inc. No member may sell or transfer his property to any other person without the written consent of the Association which shall be given only after the proposed grantee shall apply for membership upon a written application and the membership of the Association shall approve the application and the transaction.
“No owner of property located in Croton Park Colony shall mortgage his property without the written consent of the Association, to be given upon approval by the membership. Such approval shall not be given for an amount exceeding one-half of the value of the property as appraised by a real estate expert selected by the Board of Directors at the expense of the owner. When a mortgage is placed the owner shall make payments as required and exhibit evidence of such payments to the Board of Directors. In the event that any owner fails to make payments required by his mortgage on due dates the Association may make such payments and charge the amount thereof to such owner to be collected in addition to the regular annual dues or assessments charged to him as a member of the Association. * * *
“ In the event of the death of an owner of any plot within the Colony, his rights and privileges as a member of the Association may be exercised by a legal heir. Such legal heir shall automatically become a member, upon signing an application for membership whereby such heir pledges agreement with all *112 rules and regulations of the organization. If such application is not made, the property must be sold by such heir to the Association at its option or to a person approved by the Association. If such heir and the Association are unable to agree upon a price for the property, each party shall select an arbitrator and the two select a third, the three to constitute a board of arbitrators to determine the price, and their decision shall be binding upon both parties. If no arbitrator is designated by either party or the two arbitrators cannot agree upon a third within 10 days after demand by either side, application for the appointment of such arbitrator or arbitrators may be made to the Arbitration Association of America.
“ In the event that any owner shall be expelled from the Croton Park Colony, in accordance with the provisions of its Constitution, the property of which he is an owner must be sold to the Association at its option or to a person approved by the Association. If such owner and the Association cannot agree upon a price for the property, such price shall be fixed by arbitration in the manner provided in the foregoing section. Pending the sale of the property as herein provided, such expelled member shall have one year during which time he shall be entitled to all privileges of membership, in which to execute sale of property. * * *
“ The restrictions and limitations on the use and ownership of property within the Colony shall continue until January 1,1999, unless revoked or changed by Croton Park Colony, Inc.”
These “ restrictions and covenants ” go far beyond anything in section 22 of the Membership Corporations Law and, to that extent, must find support elsewhere. The section follows: ‘1 Conveyance of real property to members for dwelling houses. A membership corporation, if its by-laws so provide, and pursuant to the provisions thereof, and without leave of the court, may convey to a member of the corporation a portion of its real property for the erection thereupon of a cottage or other dwellinghouse with suitable outbuildings. When so conveyed the title to such portion, together with the buildings thereon, shall continue in such member and on his death pass to his heirs or devisees, but the land shall not be alienable except to the corporation or to a member thereof. ’ ’
The court believes the section does not attempt anything the Constitution prohibits. If, in fact, the dicta of some authorities mean what they may be construed to mean and are accurate statements of law, doubts raised by the provision for allodial tenure in section 10 of article I of the 1938 Constitution may be groundless, but the interpretation that the constitutional provi *113 sion does not limit the Legislature in any way should not be accepted without the support of some authoritative decision (see Matter of City of New York [Upper N. Y. Bay], 246 N. Y. 1, 30; Snedeker v. Congdon, 41 App. Div. 433, 438; Matter of Sand v. Beach, 270 N. Y. 281, 284; Brearley School v. Ward, 201 N. Y. 358; New York State Revised Record of Constitutional Convention of 1838, [Vol. 2], pp. 1010, 1159; [Vol. 3], p. 1731). Prohibitions implied from the nature and effect of express prohibitions in the Constitution are not unknown (Matter of Hopper v. Britt, 203 N. Y. 144, 149; Powers v. Bergen, 6 N. Y. 358, 366-367). Fortunately, however, as we have said, it is unnecessary to pass upon that question here.
Properly construed, the clause “but the land shall not be alienable except to the corporation or to a member thereof ” provides a limitation upon a special privilege granted a membership corporation, in certain circumstances, to convey its property without permission of the court. Had the Legislature wished, it could, of course, have empowered the corporation to convey without permission of the court in all circumstances or in none. The corporation was its creature; over the existence and powers of the corporation the Legislature had complete control. When it indulged the corporation, in the circumstances described, it limited the conveyance the corporation could give under the section to a conveyance upon condition subsequent, of which a breach would render the estate defeasible; in other words, a fee on condition subsequent, not a fee simple absolute. Whatever language the corporation might use in its deeds, it could not give more than it was empowered to give by the section, for the effect of the section is to write into every deed given thereunder an express condition subsequent that the grantee from the corporation and every subsequent grantee who, at commencement of his seisin, is without the status of member of the corporation in good standing must, within a reasonable time of such commencement, acquire such membership and that, in the event of breach of the condition, the grantor corporation shall have an absolute right of re-entry, repossession and reverter.
This is what the language of the deeds means. They expressly recite that they are given pursuant to the section and so necessarily take effect only within the limitations it imposes. They even provide some limit of what a reasonable time might be. Thus, they allow an expelled member a year during which he shall be entitled to all privileges of membership and in which to execute a sale of his property. Whether so much time would be allowed a grantee within which to acquire membership need not here be decided but certainly it could be no more than that, *114 since that would be extremely liberal allowance. Adumbration of all this is perceptible in the original ancestor of section 22 of the Membership Corporations Law, enacted by chapter 536 of the Laws of 1888 and repealed by section 147 of chapter 559 of the Laws of 1895, enacting the first Membership Corporations Law and substituting, by its section 13, an earlier form of the present section 22. Sober second thoughts thus reduced the grant of power but did not change the Legislature’s general intention or purpose.
Fees upon condition subsequent, or conditional fees as they are called, are an ancient form of estate. They existed long before this State or its people and were a part of the common law taken over after the Revolution. They place no restraint upon alienation but merely limit the estate conveyed. The taker never has a fee absolute. His estate is defeasible upon condition broken and re-entry into possession by the grantor within fifteen years of the breach causing reverter (Trustees of Union College v. City of New York, 173 N. Y. 38). Re-entry may be either in fact, or in law, by the commencement of an action in ejectment (Carruthers v. Spaulding, 242 App. Div. 412, 413). Omission to re-enter for fifteen years or waiver of an absolute right of re-entry terminates all possibility of reverter, for the estate does not revert automatically, as does a qualified and determinable fee, when the limitation upon which it depends fails. Before breach the grantor has a possibility of reverter, a kind of inchoate right of re-entry. Even this may be formally released or waived (Trustees of Calvary Presbyt. Church of Buffalo v. Putnam, 249 N. Y. 111).
Neither the diligence of counsel nor the efforts of the court have disclosed any reported conditions paralleling what is here found. In Trustees of Calvary Presbyt. Church of Buffalo v. Putnam (129 Misc. 506, affd. 221 App. Div. 502, affd. 249 N. Y. 111), the grantors gave land and building upon a number of conditions. One was that the trustees and their successors should “ maintain, perpetually ” on the land the public worship of God and a Presbyterian Church. Another was that the church organization thus established and maintained should “have a regular ecclesiastical connection with the General Assembly of the Presbyterian Church in the United States of America, commonly called the Old School by whatever name it may hereafter be known ”. The church to be established was thus required to become an associate of the General Assembly known as the Old School, and in default of performance thereof provision for reverter and re-entry was made. Here, the grantor has, by force of the statute, made it a condition that the grantee *115 or any subsequent grantee of the fee become a member in good standing of the grantor. In the church case, the other conditions already rendered the grant one in perpetuity for religious purposes and inalienable. It is clear, however, that the provision for association with the Old School did not do so; nor does the condition here that grantees become members of the grantor in good standing. Neither creates any perpetuity, neither restrains alienation. The particular condition would permit conveyance of whatever estate the feeholder had but no more.
The statute here places no limitation on the continuance of the fee in any grantee, or in the heirs and devisees of any grantee, after he has fulfilled the condition subsequent. It merely requires that a grantee (not an heir or devisee of a grantee) must, within a reasonable time after seisin, acquire membership in good standing in the corporation. If he complies with the qualification, what happens to his status thereafter does not fall within the limitation of the estate nor the limitation on the power of the corporation to malee a grant without leave of the court. This is an important defect in the law if it was intended to provide for membership coterminous with seisin and not merely once early during seisin.
A glance at one or two of the consequences of defendant’s interpretation of section 22 of the Membership Corporations Law is instructive. The assumption that that interpretation is correct necessarily postulates that the Legislature could and did, intentionally, create, by the enactment of that section, a new, wholly unknown, hybrid, self-inconsistent form of estate in land and did this casually by a statute primarily relating to the organization and operation of corporations and not by some amendment of, or addition to, the Beal Property Law of the State, nor by articles 2 and 3 thereof treating of tenure and the creation and division of estates, nor, specifically by sections 10, 11 and 30 thereof expressly defining who may hold and alien real property and dividing estates in real property into estates of inheritance, estates for life, estates for years, estates at -will and by sufferance. - The grantee of that estate would enjoy all the other benefits of an estate of inheritance but would be cripplingly restrained in its alienation, in fact, would be almost totally restrained therein, since he could alienate only to his grantor or to what, in effect, would be a member of the family of his grantor. The statute places no limit to the duration of this restraint and no matter how ardently the grantor-corporation desired to place a term to its continuance it could not do so. This is just what the corporation-grantor has attempted to do in its deeds. It has attempted totally to end *116 the restraint on December 31, 1998, and by its act makes recognition of the unreason and impracticability of a perpetual restraint of this kind, as it would be established if the defendant’s argument were correct. True, the corporation might accept a reconveyance from the grantee and could then itself proceed to convey to another under the usual practice prescribed by section 21 of the Membership Corporations Law and in this way might obviate the restraint. It could not do it, however, without the acquiescence and co-operation of the holder of the title and it would not be obligated or even able to do it directly. The real problem raised there by the form of the statute would be whether upon a reconveyance the corporation would receive back only the estate it had given the owner (usually all that a grantor can convey) or would receive, in addition to all the owner could convey, the additional powers and benefits not theretofore part of the owner’s estate and wholly terminated, not reserved, nor granted by the corporation’s original grant to its subsequent grantor.
Again, on the assumptions of the defense, a public sale of the realty, on execution against an owner or on foreclosure of a mechanic’s lien, could not be made at public sale and to the highest bidder. The law requires that the sheriff or referee conduct a public sale on his mandate, and always to the highest bidder (Civ. Prac. Act, §§ 660, 986). How can a public sale be open to everyone and be made to the highest bidder if the persons to whom the realty may be conveyed are limited to a very small number of individuals and one corporation? If it is assumed that the restraint in the statute is limited to a restraint upon voluntary sales but that the buyer on a public sale actually receives the owner’s title and estate burdened with the restraint, what would he get if he were not a member of the corporation? To uphold the sale it would be necessary to let him keep, hold and enjoy the title, but to uphold the literal language of the statute as it stands it would not be necessary to require him to join the corporation. His heir or devisee is not so obligated. Of course, if the restraint applies equally -to an involuntary conveyance, other than an exercise of the power of eminent domain, then there simply could not be any public sale at all. But the officers’ only power to sell would be by a public sale, so the land would become practically proof against judgment or mechanic’s lien.
The “ restrictions and covenants ” recited in the complaint go beyond the statute. They reserve to the corporation a contingent option to purchase the fee at a price to be fixed by agreement of the corporation and the owner, or by arbitrators, *117 either if an owner is expelled from membership in Croton Park Colony, Inc., or if, upon the death of a fee holder, his fee passes to his “ legal heir ’ ’, who does not avail himself of his right to become a member of the corporation automatically by the execution of an application for membership pledging agreement with all its rules and regulations. The court construes the words “ legal heir ” as “ heir or devisee ”. The corporation may, of course, waive or assign its option if the heir or devisee or expelled owner produces a third person whom it approves. Apparently, there is no option reserved if an owner voluntarily resigns. The contingencies upon which the options are conditioned are limited to occur not later than December 31, 1998, so, however regarded, these are definitely options limited in time, and not perpetual nor of undeterminable duration, and provide for a right to purchase at a price to be fixed by arbitration if the parties cannot agree. They are, then, binding and valid in this State (William P. Rae Co. v. Courtney, 250 N. Y. 271).
The prohibition in the “ restrictions and covenants ” of a mortgage by a grantee ‘ ‘ without the written consent of the association, to be given upon approval by the membership ” and the absolute prohibition of ‘ ‘ such approval ’ ’ for an amount exceeding one half of the value of the property as appraised by a real estate expert selected by the board of directors at the expense of the owner, appear to this court to be permissible and valid, though somewhat extreme in their terms. A mortgage in this State is not an alienation or transfer of title but a mere imposition of a lien. No party has cited any law here on the subject and it seems to the court reasonable that a grantee for a consideration sufficient to him may agree not to mortgage a specific piece of real property at all without the consent of his covenantee and then only upon terms and conditions and for a maximum amount fixed in the covenant.
The corporation may, of course, revoke the “ restrictions ” and limitations at will but the power reserved to it in them to change them before they expire December 31,1998 could not be exercised by the corporation to vary any of the conditions inserted in its deeds by force of the statute, nor to change any other “ covenants and restrictions ”. A covenant in a deed cannot reserve nor give the right upon any consideration to substitute unnamed or unascertainable performance for the performance covenanted. That is an impossibility. Total revocation would be an entirely different thing. Thus, although the grantor-corporation could relax the obligations of the grantee and his successors in interest or release them entirely, it could not increase them *118 nor extend the time of performance beyond December 31, 1998 nor augment its own rights or powers.
All the demands for affirmative relief in plaintiffs’ complaint must be denied except that for a declaration of the rights of the respective parties to the deeds herein and the nature of the relief to which the plaintiffs might be entitled, and declaration is made as hereinabove recited at length. To that extent plaintiffs will have judgment, without costs to any party as against any other party. The pleadings, the stipulation of March 16, 1955, the stipulation of the defendant dated May 18, 1955, and the letters in response to which it was made, will be sent with this decision to the clerk at Special Term, Part II. The deeds of the plaintiffs submitted by their counsel will be returned to him directly by registered mail.
Submit judgment at Special Term, Part II, White Plains, N. Y. on five days’ notice.