82 P.3d 675 (2003)
119 Wash.App. 513
Susan T. ALBY, a widow, Appellant,
v.
BANC ONE FINANCIAL, a Foreign Corporation, Respondent,
Ticor Title Insurance Company, a foreign insurer; Lorri Alby Brashler, a single woman, Defendants.
No. 21529-6-III.
Court of Appeals of Washington, Division 3, Panel Six.
December 18, 2003.
*676 John Montgomery, Waldo, Schweda, Montgomery, Gales PS, Spokane, WA, for Appellant.
Gregory L. Ursich, Linville, Clausen, Linton & Holley PLLC, Seattle, WA, Robert R. Rowley, Workland & Witherspoon PLLC, Spokane, WA, for Respondent.
SWEENEY, J.
A condition in a deed that constitutes an unreasonable restraint on alienation is void. But the condition must be shown to be an actual "restraint" and also to be "unreasonable." We hold that the conveyance of a fee simple determinable subject to an automatic reverter if the grantee should encumber the property during the grantor's lifetime is neither a restraint on alienation nor *677 unreasonable when freely bargained for by the parties.
This case concerns a piece of land worth in excess of $100,000 that was conveyed within the family for $15,000. The real estate contract and deed, both of which were recorded, included an automatic reverter to the grantors if the grantee mortgaged or otherwise encumbered the property during the grantors' lifetime. The grantee encumbered the property with deeds of trust as security for loans of around $100,000, and then defaulted on the promissory notes. Banc One bought the property at the trustee's sale. Surviving grantor, Susan T. Alby, brought this quiet title action to enforce the automatic reverter. The trial court dismissed on Banc One's motion for summary judgment, ruling that the reverter clause constituted an unreasonable restraint on alienation and was void.
We hold that the restriction in the deed is not a prohibited restraint on alienation. But even it were a restraint, it is not an unreasonable restraint. We therefore reverse and remand for entry of summary judgment for Susan Alby.

FACTS
In 1991, Eugene and Susan Alby negotiated and signed a real estate contract for the sale of a home on a piece of land in Addy, Washington. The purchasers were Eugene Alby's niece, Lorri Alby Brashler, and Lorri's husband, Larry Brashler. At a selling price of $15,000, the Albys considered the conveyance essentially a gift.
Central to this appeal is the following automatic reverter clause. The clause appears verbatim in both the contract and the deed.
RESERVATION in favor of Grantors, their heirs and assigns, an automatic reverter, should the property conveyed herein ever be mortgaged or encumbered within the life time of either Grantor.
Clerk's Papers (CP) at 7, 13.
The contract and deed also contained the following reservation:
RESERVATION in favor of Grantors, their heirs and assigns, an automatic reverter, should the property conveyed herein ever be subdivided within the life of either Grantor.
CP at 7, 13. The contract also reserved the right of first refusal to the Albys in the event the Brashlers decided to sell the property.
The contract was recorded in 1992. In 1996, the Brashlers paid off the contract and recorded a fulfillment statutory warranty deed.
The Brashlers then encumbered the property. On March 3, 1999, a deed of trust was recorded in Stevens County in favor of First Union Mortgage Corporation to secure the Brashlers' promissory note for $92,000. Bank of America acquired this deed of trust by assignment. A few weeks later, on March 31, the Brashlers encumbered the property with a second deed of trust to secure a note for $17,250 in favor of CIT Group/Consumer Finance, Inc. This deed of trust was also recorded in Stevens County on April 2, 1999. The $17,250 CIT Group loan was assigned to Banc One Financial Services, Inc.
In 2000, the Brashlers defaulted on the Bank of America loan. The property was auctioned at a trustee's sale. Banc One was the highest bidder at $100,822.16. The bank demanded that Lorri Brashler either vacate the property or pay rent. She refused to do either.
Grantor Susan Alby was by this time widowed and living in Nebraska. Ms. Alby learned of the encumbrance in 2001. She filed this quiet title action, claiming title to the property under the automatic reverter. She alleged that title reverted to her automatically on March 3, 1999, the date the first deed of trust was recorded. Banc One, therefore, acquired nothing at the trustees' sale. Banc One asserted numerous affirmative defenses. The central issue is the bank's affirmative defense that the restrictions in the deed are void as a matter of public policy as unreasonable restraints on alienation.
Ms. Alby and the bank filed cross motions for summary judgment. The trial court denied Ms. Alby's motion and awarded summary judgment to Banc One. The court concluded that the two automatic reverter clauses constituted unreasonable restraints *678 on alienation in violation of public policy and were therefore void.

DISCUSSION
The bank contends that the inability to mortgage or subdivide this property makes it less marketable than if it were free of restrictions. Regardless of the intent of the parties, therefore, the bank contends the disputed restrictions must be stricken from the deed. We disagree. The desirability of maximizing the marketability of property is not the only public policy consideration at issue.
STANDARD OF REVIEW
When called upon to interpret a deed, we apply the same principles as to any other contract. See, e.g., Furst v. Lacher, 149 Minn. 53, 55, 182 N.W. 720 (1921). But here, we are not asked to interpret the deed. The parties are in full agreement, both as to the meaning of the terms of the deed and to the surrounding facts. The parties agree that the unambiguous language of the deed subjects the conveyance to an automatic reverter to the grantors in the event the grantee encumbers the property during the life of either grantor. And they agree that this accurately reflects the intent of both parties to the conveyance.
The sole question presented, then, is whether the clear intent of the parties as to the disposition of this property is enforceable as a matter of law. When the facts are undisputed, we review de novo. Meresse v. Stelma, 100 Wash.App. 857, 864, 999 P.2d 1267 (2000).
RESTRAINT ON ALIENATION
We first address the question of whether a conveyance in fee simple with the possibility of reverter constitutes a "restraint on alienation" for the purposes of public policy analysis. If it does, we ask whether it is an "unreasonable" restraint.
Restatement Analysis. The first Restatement of Property defines a restraint on alienation as an attempt by an otherwise effective conveyance to cause a later conveyance to terminate all or part of the property interest purportedly conveyed and discusses various categories of restraint. RESTATEMENT OF PROP. § 404(1)(c) (1944) (RESTATEMENT (FIRST)). The second restatement, however, expressly restricts its treatment of restraints on alienation to the context of donative transfers. RESTATEMENT (SECOND) OF PROP.: DONATIVE TRANSFERS, Introduction, at 1 (1983) (RESTATEMENT (SECOND)). Any direct restraint permitted under the rules of donative transfer, however, is equally permissive in a non-donative transfer. RESTATEMENT (SECOND) Part II, at 144.
Under the Restatement (Second), a forfeiture restraint (such as is alleged here) that "will terminate at the end of a life (or reasonable number of lives) in being at the time of the transfer[] is valid." RESTATEMENT (SECOND)))) § 4.2(1), at 175. In the Alby-Brashler deed, the forfeiture clause will terminate at the end of the life of Susan Alby. It is valid in the donative context and is, therefore, equally valid in the non-donative context.
Both the Interest Conveyed and the Interest Retained Are Vested and Alienable. The residual property interest retained by the grantor is termed a "possibility of reverter." King County v. Hanson Inv. Co., 34 Wash.2d 112, 118, 208 P.2d 113 (1949); Hodgins v. State, 9 Wash.App. 486, 494, 513 P.2d 304 (1973). The possibility of reverter is an interest in land that vests immediately upon its creation. Jupiter Oil Co. v. Snow, 819 S.W.2d 466, 468 (Tex.1991). Because it is immediately vested in the grantor, it may at all times be freely alienated by the grantor without affecting the underlying fee simple determinable interest conveyed to the grantee. Id. Washington cases are in accord. An instrument creating an estate that vests immediately upon the instrument's going into effect does not constitute a restraint on alienation merely because the full enjoyment of the estate is postponed. Kendall v. Kendall, 43 Wash.2d 418, 435, 261 P.2d 422 (1953).
Here, Lorri Brashler and Susan Alby each held a vested interest in the property. Each was free to alienate that interest at any *679 time.[1] In fact, the contract provided for the possibility that Ms. Brashler would sell her interest by giving Ms. Alby the right of first refusal. This vitiates any perceived restraint. Robroy Land Co. v. Prather, 95 Wash.2d 66, 72, 622 P.2d 367 (1980). Nothing in this conveyance prevents Ms. Brashler, as grantee, from selling her interest in the property.
Unvested Conditional Remainders Distinguished. The immediately vested possibility of reverter distinguishes the restrictions in this conveyance from those cited by Banc One as examples of restraints deemed unreasonable by Washington courts. We will not give effect to a provision in a deed that restricts the grantee's right to dispose of the property, unless the deed also includes some mechanism for disposing of the property if the grantee violates the restricting condition. Richardson v. Danson, 44 Wash.2d 760, 768, 270 P.2d 802 (1954) (citing L.S. Tellier, Comment Note, Annotation, Absence of limitation over in event of nonperformance of condition as to conduct or obligation of devisee, legatee, or grantee, as affecting operation of condition, 163 A.L.R. 1152, 1174 (1946)). It is generally accepted that a stipulation in a conveyance restricting the grantee's right to sell or dispose of the property is ineffective in the absence of a provision for reversion, limitation over, or the like. Id.
Banc One relies heavily on Danson. There, the conveyance at issue was a will in which the dead grantor prohibited the living inheritor of a purported fee simple from alienating the property under any circumstances for 20 years. Period. The will contained no provision for disposing of the property in the event the grantee violated the prohibition. Danson, 44 Wash.2d at 766, 270 P.2d 802.
Likewise, in Riste v. E. Wash. Bible Camp, Inc., also relied on by the bank, a Bible Camp sold lakeside lots but prohibited the buyers from reconveying them without the Bible Camp's approval. Riste v. E. Wash. Bible Camp, Inc., 25 Wash.App. 299, 605 P.2d 1294 (1980). Again, the agreements included no fallback provision in the event the fee holder violated the restriction. Id. at 300-01, 605 P.2d 1294.
The conveyances in Danson and Riste simply say "thou shalt not alienate." They do not say, "or else." As we read these cases, it is the omission of "a provision for reversion, or the like" that renders these restrictions unenforceable restraints on alienation. Tellier, supra, at 1174. Without an "or else" provision, no interest holder presently exists with the power to convey, whatever the circumstances, no matter how willing the grantee might be to do so. But there is a difference between the power to alienate and the willingness to do so. A restraint on alienation means the absence of the former, not merely the latter.
The facts here are distinguishable from those of Danson and Riste. The Alby-Brashler deed contains an automatic reverter to the grantor in the event the grantee encumbers the property. This automatic reverter is the necessary "or else" mechanism. It ensures that this property's entire bundle of sticks is presently alienable by somebody  just not by Ms. Brashler acting alone. Nothing prevents a potential buyer from consulting the recording system (provided by the state to protect third parties in precisely such a case), discovering the deed provisions, bargaining with Ms. Brashler for her fee simple determinable interest, and then negotiating with Ms. Alby for her reversion interest. The low probability that Ms. Alby would part with her interest at any price does not create a restraint on alienation. She at all times had the power to sell her interest.
This condition on an interest in land constitutes a fully enforceable fee simple determinable, not a restraint on alienation.
Banc One points to holdings from other jurisdictions that to convey less than the *680 entire bundle of sticks, while not technically restraining alienation, will be void if the limitation has the practical effect of doing so. See, e.g. Prieskorn v. Maloof, 1999-NMCA-132, ¶ 12, 128 N.M. 226, 230, 991 P.2d 511. The bank contends that Washington has adopted this view. The only Washington decisions cited as authority, however, involve deeds lacking any reversion or other provision disposing of the property in the event the condition fails. Danson, 44 Wash.2d at 766, 270 P.2d 802. Banc One offers no authority for the proposition that the fee simple determinable with the possibility of reverter per se is unenforceable as a matter of law. To so hold here would, therefore, be a significant extension of the holding of Danson. We decline to do so. Even accepting, however, for the sake of argument that the possibility of reverter in this conveyance amounts to a restraint on alienation, we would still uphold it as reasonable.
NOT UNREASONABLE
Unreasonable restraints on alienation are invalid. But a restraint is valid if it is reasonable and is justified by the legitimate expectations of the parties. Lawson v. Redmoor Corp., 37 Wash.App. 351, 355, 679 P.2d 972 (1984). At common law, "`reasonable restraints upon the alienation of property are enforceable, but will be construed to operate within their exact limits.'" Gartley v. Ricketts, 107 N.M. 451, 453, 760 P.2d 143 (1988) (quoting State ex rel. Bingaman v. Valley Sav. & Loan, 97 N.M. 8, 11-12, 636 P.2d 279 (1981)). This is the rule followed in Washington.
The deed provision at issue here calls for the forfeiture of Ms. Brashler's interest in the property if she encumbers it. The general rule in Washington is that conditions on conveyances that may result in forfeiture are highly disfavored. Therefore, language of limitation that could lead to forfeiture is strictly construed. Grove v. Payne, 47 Wash.2d 461, 465, 288 P.2d 242 (1955). Nevertheless, if the grantor's intent to attach a defeasible condition to the estate is expressed in "plain and unambiguous language," Washington courts unhesitatingly enforce the expectations of the parties. Id. Where, as here, the language of a freely negotiated instrument clearly shows an intent by both parties to impose a limiting condition on the conveyance, the courts will enforce the condition without reservation. Id.
Here, both the contract and the deed use the words "automatic reverter" repeatedly. It is not disputed that both parties to this conveyance intended that the reverter clause would be triggered by any attempt to encumber the property while Ms. Alby lived, and that they created an instrument unambiguously expressing their mutual intent.
Restatements Are In Accord. Contrary to Banc One's contentions, neither the first nor second Restatement of Property requires a different result.
Under the Restatement (First), a restraint is unreasonable if it is capricious, malicious, unlimited in duration, affects a large number of potential interests, and serves no legitimate interest of the grantor. RESTATEMENT (FIRST) § 406.
Here, the Alby restriction is not capricious or malicious. And it is of limited though indeterminate duration. It serves, moreover, a worthwhile purpose. It protects the legitimate interest of the Albys in securing for themselves the comfort of knowing they will not be around to see the next generation mortgage the property to the hilt and then lose it by defaulting on the loan. The dissent takes the view that once the Brashlers paid the $15,000 contract price the Albys had no further interest in the property. But financial interest is not the only interest for the purposes of reasonableness analysis. In exchange for a fraction of the market value, the Albys handed over a substantial bunch of the sticks. The conveyance was precisely crafted in the parties' mutual interests. Public policy would not be served by restricting property owners and their grantees to either all or nothing conveyances.
Competing Public Policies. We are unpersuaded by the bank's public policy arguments in this case. Banc One contends that the same public policy considerations that disfavor "dead-hand" restraints of alienation in wills apply with equal force to restraints of *681 alienation in contracts. We cannot agree. The key distinction is not, as Banc One contends, that between wills and deeds. The operative distinction is between unilateral donative transfers and commercial transactions fully consented to by the grantee. Procter v. Foxmeyer Drug Co., 884 S.W.2d 853, 858 (Tex.App.1994); see Gerald Korngold, For Unifying Servitudes and Defeasible Fees: Property Law's Functional Equivalents, 66 TEX. L.REV. 533, 539-42 (1988).
The Albys put their young relatives in possession of real estate worth well over $100,000 in exchange for $15,000 and the Brashlers' promise not to mortgage or otherwise encumber the property while the Albys lived. At the time, the Albys were alive and living on the family estate of which this property was a part. They wished to convey possession immediately with the unconditional fee to pass upon the Albys' demise. At the same time, the Albys were not willing to surrender, while they lived, (a) the difference between $100,000 and $15,000, and (b) the power to protect their continuing personal interest.
True, free alienation of property is generally in the public interest, and conditions leading to forfeiture are justly disfavored. But the public also has an interest in preserving the freedom to contract for the transfer of interests in land under mutually agreed-upon terms. See, Korngold, supra, at 539-42.
The language in the contract and deed at issue here served legitimate interests of both parties to the agreement. The Brashlers acquired all the possessory rights inherent in a fee simple estate. And, reflecting the small consideration, the Albys postponed the Brashlers' enjoyment of the right to liquidate the property's full value.
Public policy may be more permissive "when the conveyee consents, through the freedom of contract, to limit his own power to convey in the future as long as the public interest is not harmed." Procter, 884 S.W.2d at 858. Public policy is not affronted if a grantee, for a consideration she deems sufficient, agrees to hold a particular piece of property free of liens for a period of limited duration. Resnick v. Croton Park Colony, Inc., 3 Misc.2d 109, 117, 151 N.Y.S.2d 328 (1955). Public policy is not served by permitting a grantee to negotiate the purchase of a limited interest in property and then to dispose of an absolute interest. No public interest would be served by depriving the Albys of the right to convey a determinable fee at a fraction of the value of the unconditional fee.
In the analogous situation of the spendthrift trust, it is well settled that the courts give effect to a grantor's intent that trust property will remain with the beneficiary free and clear of liens. Therefore, as here, potential creditors are on notice. Erickson v. Bank of Cal., 97 Wash.2d 246, 250, 643 P.2d 670 (1982). On facts similar to ours, the Minnesota court upheld a conveyance between parents and their son by which the property automatically reverted to the parents if the son encumbered it during the parents' lifetime. Furst v. Lacher, 149 Minn. 53, 182 N.W. 720 (1921). Significantly, the Lacher deed was granted with no consideration. Id. at 54, 182 N.W. 720. The determining factor in upholding the conveyance was that the intent of the parties was clear, rendering their rights and responsibilities enforceable as in any other contract. Id. at 55, 182 N.W. 720.
Likewise, here, the precise terms of the conveyance were recorded. Potential lenders were on notice that a deed of trust on this property was worthless as security without the participation of the Albys.
The Albys put the Brashlers in immediate possession of their inheritance of real estate worth well over $100,000 in exchange for $15,000 and the promise not to mortgage it while the Albys lived. They were not required to convey either a greater or lesser interest than they wished.
We reverse the summary judgment in favor of Banc One and hold that Susan Alby is entitled to summary judgment.
I CONCUR: SCHULTHEIS, J.
KURTZ, J. (dissenting).
The rule adopted by the majority is that a reverter clause in a deed does not violate the *682 doctrine of restraint on alienation if the property automatically reverts back to a person or entity that can alienate the property. Additionally, the majority reasons that the clause is not a restraint on alienation because it does not absolutely prohibit transfer. As applied here, the majority's rule means that the automatic reverter clause in the Alby to Brashler deed is not a restraint on alienation because the property automatically reverts to Susan Alby, who is free to convey the property, subject to the clause. Finally, the majority argues that even if the reverter clause is a restraint on alienation, it is a reasonable restraint that does not violate the restraint on alienation doctrine.
As the majority recognizes, the general rule is that a provision directly barring all alienation of a fee simple estate is unenforceable. Richardson v. Danson, 44 Wash.2d 760, 767, 270 P.2d 802 (1954); 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 1.26 (1995) (STOEBUCK). Restraints on alienation fall into two categories: direct and indirect restraints. The law of restraint on alienation condemns direct restraints. LEWIS M. SIMES & ALLAN F. SMITH, THE LAW OF FUTURE INTERESTS § 1112 (2d ed. 1956) (SIMES & SMITH). Direct restraints are those provisions in an instrument which, by their terms, purport to prohibit or penalize the alienation of property. SIMES & SMITH, supra, § 1112.
Direct restraints take one of three forms: a promissory restraint, a disabling restraint, or a forfeiture restraint. SIMES & SMITH, supra, § 1131. A promissory restraint is an agreement by the holder of an interest not to alienate, with contractual liability, if the agreement is breached. A disabling restraint is a provision in the document creating the interest that renders void any attempt to alienate the interest. A forfeiture restraint is a condition that terminates the fee upon an attempt to alienate. LEWIS M. SIMES, HANDBOOK OF THE LAW OF FUTURE INTERESTS §§ 112-114, at 237-46 (2d ed. 1966) (SIMES).
The automatic reverter clause here is a forfeiture restraint. Although there are no Washington decisions on point, the general rule is that forfeiture restraints interfere with the alienability of property and, if unreasonable, are void. STOEBUCK, supra, § 126; SIMES, supra, § 114, at 241-42. For example, § 4.2(3) of the Restatement (Second) of Property states the general rule as "[a] forfeiture restraint imposed on an interest in property, which restraint is not governed by subsections (1) or (2), is valid if, and only if, under all the circumstances of the case, the restraint is found to be reasonable."[1] RESTATEMENT (SECOND) OF PROP.: DONATIVE TRANSFERS § 4.2(3), at 175 (1983).
The majority reasons the clause in question does not restrain the alienation of the subject property because the clause does not absolutely prohibit transfer. On this basis, the majority distinguishes Richardson v. Danson, which held that an attempt to prohibit an encumbrance or conveyance of a fee simple estate for 20 years was void. The fact that a clause does not absolutely prohibit transfer does not mean that the clause is not a direct restraint implicating the restraint on alienation doctrine; it only means the restraint in Danson is a disabling restraint, while the automatic reverter clause here is a forfeiture restraint. Both forfeiture and disabling restraints are restraints on alienation that implicate the doctrine. STOEBUCK, supra, § 1.26; JOYCE PALOMAR, PATTON & PALOMAR ON LAND TITLES § 209 (3d ed.2002); RESTATEMENT OF PROP. §§ 404-417 (1944); SIMES, supra, §§ 112-114.
Moreover, Washington case law suggests the ability to transfer the property is not determinative. For instance, in Bellingham First Federal Savings & Loan Association v. Garrison, 87 Wash.2d 437, 553 P.2d 1090 (1976), the Supreme Court considered whether a "due-on-sale" clause in a deed of trust is a reasonable restraint on alienation. While a due-on-sale clause may make a sale more difficult, its presence in an instrument does not absolutely prevent the transfer of the *683 property. Even so, the court held that a due-on-sale clause is presumed to be an unreasonable restraint on alienation unless the lender can show that the enforcement of the clause is necessary to protect the lender's security.[2]Id. at 441, 553 P.2d 1090. According to the reasoning of the majority opinion, the holding in Garrison should have been that a due-on-sale clause is not a restraint on alienation because the clause does not absolutely prohibit transfer, i.e., the property is vested in a person or entity that can alienate the property subject to the clause. See also Miller v. Pac. First Fed. Sav. & Loan Ass'n, 86 Wash.2d 401, 545 P.2d 546 (1976).
Similarly, in Girard v. Myers, 39 Wash. App. 577, 694 P.2d 678 (1985), Lawson v. Redmoor Corp., 37 Wash.App. 351, 679 P.2d 972 (1984), and Tombari v. Blankenship-Dixon Co., 19 Wash.App. 145, 574 P.2d 401 (1978), our court considered whether fixed price preemptive rights were unreasonable restraints on alienation. While a fixed price preemptive right may make a sale less attractive, its presence in an instrument does not absolutely prevent the transfer of the property. In each case, our court followed the flexible approach of Bellingham, recognized the clause in question interfered with alienation, and decided the case on the issue of whether the restraint was reasonable or unreasonable. Girard, 39 Wash.App. at 582-86, 694 P.2d 678; Lawson, 37 Wash.App. at 353-55, 679 P.2d 972; Tombari, 19 Wash. App. at 148-50, 574 P.2d 401. According to the reasoning of the majority, the holdings of these cases should have been a fixed price preemptive right can never be an unreasonable restraint on alienation because the property is vested in a person or entity that can alienate the property subject to the right.
In deciding this case, I would adopt the simple rule stated in § 3.4 of the Restatement (Third) of Property:
A servitude that imposes a direct restraint on alienation of the burdened estate is invalid if the restraint is unreasonable. Reasonableness is determined by weighing the utility of the restraint against the injurious consequences of enforcing the restraint.
RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 3.4, at 440 (2000). This treatment of the issue is consistent with the language concerning a forfeiture restraint in § 4.2 of the Restatement (Second) of Property: Donative Transfers.
Here, the correct question is not whether the automatic reverter clause is a restraint on alienation, but whether it is reasonable or unreasonable. The answer to that question requires the resolution of a finely balanced issue. There are compelling arguments favoring Ms. Alby's position, which the majority forcefully states and I need not repeat. Regardless, I would hold that after the real estate contract was paid in full, the inclusion of the automatic reverter clause in the fulfillment deed was an unreasonable restraint on alienation.
The automatic reverter clause in the Alby to Brashler deed prevents any encumbrance of the property for the remaining lifetime of Susan Alby. Such a restraint on alienation is generally held to be void. 3 THOMPSON ON REAL PROPERTY § 29.03(b), at 706-07 (David A. Thomas 2d ed.2001). This restriction significantly affects the marketability of the property for an unknown period of time. Furthermore, after the real estate contract was paid in full, Susan Alby had no present interest in the land to protect. Because she transferred a fee simple estate to the Brashlers, her only remaining interest is a contingent future interest that violates public policy by restraining alienation.
For these reasons, I respectfully dissent and would affirm the judgment of the trial court.
NOTES
[1] The dissent characterizes this as a contingent future interest, alienable by Ms. Alby only if and when the property reverts. It is not. An automatic right of reverter is a vested interest and is immediately alienable upon its creation. For this reason, the right of reverter is not subject to the rule against perpetuities. Higbee Corp. v. Kennedy, 286 Pa.Super. 101, 107-08, 428 A.2d 592 (1981); RESTATEMENT (SECOND) § 1.4, at 48-50.
[1] Sections (1) and (2) deal with "forfeiture restraint[s] imposed in a donative transfer," such as a testate disposition or gift, and (3) deals with "[a] forfeiture restraint imposed on an interest in property," such as the transaction between Ms. Alby and the Brashlers. RESTATEMENT (SECOND) OF PROP.: DONATIVE TRANSFERS § 4.2, at 175 (1983).
[2] The federal Garn-St. Germain Depository Institutions Act of 1982 now preempts state laws that restrict the enforcement of due-on-sale clauses in real property loan cases, thereby making such clauses generally enforceable. 12 U.S.C. § 1701j-3.