128 P.3d 81 (2006)
Susan T. ALBY, a widow, Respondent,
v.
BANC ONE FINANCIAL, a foreign corporation, Petitioner,
Ticor Title Insurance Company, a foreign insurer; Lorri Alby Brashler, a single woman, Defendants.
No. 75001-7.
Supreme Court of Washington, En Banc.
Argued January 13, 2005.
Decided February 9, 2006.
*82 John Montgomery, Waldo Schweda & Montgomery PS, Spokane, for Petitioner/Appellant.
Gregory Louis Ursich, Linville Ursich PLLC, Seattle, Robert Ray Rowley, Attorney at Law, Spokane, for Appellee/Respondent.
JOHNSON, J.
¶ 1 The issue in this case is whether a restriction in a deed, which provides that the deeded property automatically reverts to the grantor if the property is mortgaged or encumbered during the life of the grantor, is a valid restraint on alienation. We find the clause to be reasonable and justified by the interests of the parties and, therefore, valid. We affirm the Court of Appeals.

FACTS
¶ 2 In 1992, Eugene and Susan Alby sold part of their family farm to their niece, Lorri Brashler, and her husband, Larry Brashler. Although the property's market value was $100,000, the parties agreed to a purchase price of $15,000. The contract and the deed contained nearly identical clauses providing for automatic reverter to the Albys if the property were subdivided, mortgaged, or otherwise encumbered during either of the Albys' lifetimes. The restriction at issue provided:
RESERVATION in favor of the Grantors, their heirs and assigns, an automatic reverter, should the property conveyed herein ever be mortgaged or encumbered within the life time of either Grantor.
Clerk's Papers (CP) at 48-49.
¶ 3 The parties included these restrictions as a means of ensuring that the land remained within the family during the Albys' lifetimes.[1] CP at 39-40. Additionally, the real estate contract provided that if Lorri and Larry Brashler ever divorce, the property would remain Lorri Brashler's because the property was in essence a gift to her as separate property. CP at 7. The parties recorded the real estate contract on April 28, 1992. After the Brashlers satisfied their obligations under the contract, the warranty deed was recorded on September 27, 1996.
¶ 4 Notwithstanding the restrictions, the Brashlers obtained a loan for $92,000 from First Union Mortgage Corporation by executing a deed of trust for the property on February 26, 1999. This loan was recorded on March 3, 1999. The Brashlers executed a second deed of trust to obtain a second loan for $17,250 from CIT Group on March 31, 1999. This loan was recorded on April 2, 1999. CIT Group assigned the loan to petitioner, Banc One Financial (Banc One). The Brashlers defaulted on their payments on their first loan and the lender held a trustee's sale on October 27, 2000. Banc One purchased the property at the sale for *83 $100,822.16 and recorded the trustee's deed on November 2, 2000.[2]
¶ 5 On April 18, 2002, Susan Alby filed a quiet title action in Stevens County Superior Court against Banc One, arguing the title to the property automatically reverted to her when the Brashlers encumbered the property.[3] On competing motions for summary judgment, the trial court quieted title in Banc One and declared the clause void against public policy as an unreasonable restraint on alienation. The Court of Appeals reversed, concluding that the clause is valid because it is not a restraint on alienation and even if it were, the restraint is reasonable. Alby v. Banc One Fin., 119 Wash.App. 513, 82 P.3d 675 (2003). We granted review to determine whether the clause is a restraint on alienation, and if so, whether it is reasonable.

ANALYSIS
¶ 6 The first step in resolving the dispute in this case is to identify the type of interest conveyed. Banc One and Susan Alby agree that the interest conveyed to the Brashlers is a fee simple determinable. A "fee simple determinable" is an estate that will automatically end and revert to the grantor if some specified event occurs. BLACK'S LAW DICTIONARY 649 (8th ed.2004). We agree that the Albys conveyed a fee simple determinable interest to the Brashlers because the estate would revert to the Albys if the property were mortgaged or encumbered during their lifetimes.
¶ 7 Though we conclude the transferred estate is a fee simple determinable estate, that conclusion does not end the analysis. Fee simple determinable estates are subject to the rule against restraints on alienation, which prohibits undue or unreasonable restraints on alienation. Black's Law Dictionary defines a "restraint on alienation" as:
[a] restriction, usu[ally] in a deed of conveyance, on a grantee's ability to sell or transfer real property; a provision that conveys an interest and that, even after the interest has become vested, prevents or discourages the owner from disposing of it at all or from disposing of it in particular ways or to particular persons.
Black's, Supra, at 1340.
¶ 8 Here we have a restraint on alienation because the clause prevented the Brashlers from disposing of the property in a particular way: they could not mortgage or encumber the property without the property automatically reverting to the Albys. Additionally, though the clause did not directly prevent the Brashlers from selling the property, it limited the property's marketability because it prevented potential buyers from financing the purchase of the property.
¶ 9 Because we find the prohibition on mortgaging or encumbering to be a restraint on alienation, we must next determine the validity of the restraint. Washington follows the reasonableness approach to restraints on alienation. "Unreasonable restraints on alienation of real property are ... invalid; reasonable restraints on alienation... are valid if justified by the legitimate interests of the parties." McCausland v. Bankers Life Ins. Co., 110 Wash.2d 716, 722, 757 P.2d 941 (1988) (emphasis added). In determining whether a restraint is reasonable, we balance the utility of the purpose served by the restraint against the injurious consequences that are likely to flow from its enforcement.[4]See RESTATEMENT *84 (THIRD) OF PROPERTY § 3.4, at 440 (2000). Whether a restraint is limited in scope or time is often highly significant. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 1.26, at 50 (2d ed.2004). In addition to the scope and duration of the restraint, we look at the purpose of the restraint and whether the restraint is supported by consideration.
¶ 10 The balance in this case is between the operation of a free market in land and the right to maintain property in family ownership for a limited time period. Family ownership is not always subordinated to immediate and free alienability. The fact that restraints may negatively affect marketability does not necessarily render them unreasonable. The Albys conveyed a restrained interest in long-held family property to their niece and her husband for a substantially reduced price with the purpose of maintaining family ownership of the property through the Albys' lifetimes. This restraint prevents the property from being mortgaged or encumbered but does not restrict the right to sell or transfer the property. The restraint has a limited scope of preventing only mortgaging or encumbering, a limited duration of the Albys' lifetimes, and a legitimate purpose of keeping the property in the family. The restraint is also supported by the consideration apparent in the significantly reduced purchase price. The recorded deed provides notice to potentially affected parties. Balancing the relevant factors, we conclude that the potentially injurious consequences of not mortgaging or encumbering the property and reducing its marketability are outweighed by the utility of enforcing the limited restraint to keep the property in the family for the Albys' lifetimes.
¶ 11 We next consider the legitimate interests of the parties. The Albys have a legitimate interest in keeping the property in the family and in preventing the property from being lost through foreclosure. The Brashlers have a legitimate interest in realizing the right to freely dispose of their property. However, the Brashlers' interest in free alienation is limited by the fact that they agreed to the restraint in consideration for the substantially reduced price. Enforcement of the restraint still provides the Brashlers with a legitimate interest in owning the property with every aspect of absolute ownership except the right to mortgage or encumber the property. Both parties also have legitimate interests in enforcing the terms of their contract.
¶ 12 When evaluating the reasonableness of any agreement placing a restraint on alienation, courts should be reluctant to invoke common law principles disfavoring restraints to invalidate a bargained for contract freely agreed to by the parties. The parties here contracted to transfer property with the purpose of keeping the family farm in the family during the lifetimes of the grantors. We find nothing unreasonable about this purpose. We conclude that the restraint, which prevents the Brashlers from mortgaging or encumbering the property, is reasonable and justified by the legitimate interests of the parties. Accordingly, we affirm the Court of Appeals and remand to superior court with directions to enter summary judgment in favor of and quieting title in Susan Alby.
OWENS, SANDERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.
ALEXANDER, C.J. (dissenting).
¶ 13 I disagree with the majority's determination that Susan Alby placed a valid restraint on alienation of her niece's property and that the Court of Appeals should be affirmed. While I agree that a reasonableness test applies to restraints on alienation, I would hold that the restraint in this case was not reasonable because the cherished value that our state places on free alienability outweighs the value to the Alby family of maintaining the property in family ownership.
¶ 14 We determine whether a restraint on alienation is reasonable or unreasonable based on "factual determinations and consideration of the equities," Morris v. Woodside, 101 Wash.2d 812, 818, 682 P.2d 905 (1984), and on an assessment of the "legitimate interests of the parties." Erickson v. Bank of Cal., 97 Wash.2d 246, 249, 643 P.2d 670 (1982). Determining reasonableness also requires "weighing the utility of the restraint *85 against the injurious consequences of enforcing the restraint." RESTATEMENT (THIRD) OF PROPERTY § 3.4, at 440 (2000).
¶ 15 Thus, we first consider the "legitimate interests of the parties."[1] Eugene and Susan Albys' interest was keeping the property in the Alby family. Lorri and Larry Brashlers' interest, on the other hand, was that of realizing the right of a property owner to freely dispose of his or her property interest, which, as this court has recognized, is among the "`fundamental attribute[s] of property ownership.'" Manufactured Hous. Cmtys. v. State, 142 Wash.2d 347, 364, 13 P.3d 183 (2000) (quoting Guimont v. Clarke, 121 Wash.2d 586, 595, 854 P.2d 1 (1993)). As has been observed in the Restatement (Second) of Property,
[i]f the full benefits which flow from the freedom to alienate an interest in property... are to be obtained, the owner of such interest must be able to take advantage of any of the existing methods of transferring property. Any restraint which interferes with the power to alienate in some manner, though it leave the owner of the estate free to alienate in other ways, may substantially hinder him in disposing of the property.
RESTATEMENT (SECOND) OF PROPERTY § 4.2 cmt. n at 183 (1983).
¶ 16 According to Susan Alby, the parties here "freely contracted for the exchange," Answer to Pet. for Review at 11, with full knowledge and after an opportunity to freely negotiate the terms of their bargain. She argues that, although the Brashlers' right to exercise one of the incidents of property ownership was limited by the terms of the deed, this limitation was reflected in the selling price of the property as they paid significantly below market price.
¶ 17 However, nothing in the record supports the claim that the Albys and the Brashlers bargained for a reduction in price in exchange for an estate that did not include the full right of alienation or that the reduction in price was consideration for conveyance of a reduced estate. The real estate contract that the parties signed indicated that the Albys considered the sale of the property to Lorri Brashler to be "in essence a gift to her." Clerk's Papers (CP) at 7. Indeed, Susan Alby's own affidavit reflects that the property was sold to the Brashlers at a reduced price, not in exchange for agreeing to a lesser estate, but as a favor to Lorri Brashler. She stated that
[a]fter several discussions with LORRI about what she and her husband, LARRY R. BRASHLER, could afford to pay for the home, my husband GENE, and I decided that $15,000.00 was what LORRI and her husband could afford, even though we believed the property and home was of considerably greater valued [sic].
CP at 40. Susan Alby's affidavit also suggests that the Albys placed the restraint on alienation into the contract and deed after having agreed with the Brashlers on a selling price. For the foregoing reasons, I believe that the sale of the property at a reduced price was not a bargained-for exchange in consideration for the conveyance of a reduced estate.
¶ 18 Susan Alby notes that the restraint imposed on the alienability of the property in this case was limited both in scope and duration because it was a restriction on mortgaging or encumbering only and expired upon the death of both of the grantors. However, this limitation effectively rendered the property unalienable during the life of the grantors. The duration of the restriction is unknown; it could be a significant period of time, depending on Susan Alby's longevity.[2] During this period, the Brashlers would effectively be relegated to the status of lease-holders of the property, with the right of possession only. Furthermore, the restriction "runs with the land" and therefore limits the rights of not only the Brashlers, the immediate purchasers of the property, but all *86 subsequent purchasers, for the lifetime of the grantor.
¶ 19 The utility of maintaining property in family ownership has been viewed in the law as subordinate to the value of free alienability of property. 3 JOHN A. BORRON, JR., SIMES & SMITH: THE LAW OF FUTURE INTERESTS § 1117 (3d ed.2004). The doctrine of restraint on alienation and other common law doctrines such as the rule against perpetuities arose, in large part, to ensure that the desire of individuals to retain ownership of property within their family did not harm the economic interests of the nation by destroying the free market for property. Id. Despite the long history of this principle, the majority asserts that "[f]amily ownership is not always subordinated to immediate and free alienability." Majority at 84. It cites no authority for this assertion, which dismisses the doctrine recognized in Simes & Smith that society has a stronger interest in the free alienability of property than in fostering family dynasties.
¶ 20 Maintaining the property within the Alby family no doubt has certain value, to Susan Alby individually and to her family. Continued ownership of the property would allow them to maintain possession over land to which they no doubt have an emotional attachment. However, allowing Susan Alby to limit the alienability of the property for the sole purpose of maintaining it in the Alby family has injurious consequences both to the Brashlers and to the general public. The Brashlers are deprived of their right to freely dispose of their property, a right recognized as being one of the "`fundamental attribute[s] of property ownership.'" Manufactured Hous. Cmtys., 142 Wash.2d at 364, 13 P.3d 183 (quoting Guimont, 121 Wash.2d at 595, 854 P.2d 1). Further, the property is effectively removed from the marketplace, causing economic consequences affecting society as a whole.
¶ 21 For the foregoing reasons, I would hold that the clause in the Alby/Brashler deed providing for automatic reversion of the property if it is mortgaged or encumbered during the life of either grantor is unreasonable and, therefore, void. Accordingly, I would reverse the Court of Appeals and remand to the superior court for reinstatement of the summary judgment in favor of Banc One.
MADSEN and BRIDGE, JJ., concur.
CHAMBERS, J. (dissent).
¶ 22 I respectfully dissent. But first, I agree with my colleagues that Eugene and Susan Alby conveyed a fee simple determinable estate with the possibility of reverter. Majority at 83; see also ROGER A. CUNNINGHAM, ET AL., THE LAW OF PROPERTY § 2.3, at 35 (2d ed.1993). The appropriate next question, as the majority properly notes, is whether the reservation was an unreasonable restraint on alienation. Majority at 83. We also agree that the Court of Appeals was in error when it concluded that the encumbrance clauses in the fulfillment deed did not operated as a restraint on alienation. Black's Law Dictionary defines a "restraint on alienation" as:
[a] restriction, usu[ally] in a deed of conveyance, on a grantee's ability to sell or transfer real property; a provision that conveys an interest and that, even after the interest has become vested, prevents or discourages the owner from disposing of it at all or from disposing of it in particular ways or to particular persons. Restraints on alienation are generally unenforceable as against public policy favoring the free alienability of land.
BLACK'S LAW DICTIONARY 1340 (8th ed.2004). The clause clearly qualifies.
¶ 23 I part company with my colleagues because the encumbrance clause at issue in this case was, in my view, an unreasonable restraint on alienation because it prevented Lorri and Larry Brashler, or their successors, from transferring their interest in the property in a particular and very common way: by way of mortgage or encumbrance. The encumbrance clause also had the effect of seriously discouraging disposition of the property by limiting the ability of a potential buyer to finance the purchase primarily through a mortgage.
¶ 24 It is, however, primarily the majority and Chief Justice Alexander's discussion of reasonableness with which I take issue. *87 Given the nature of the estate and the restraint, I would hold that the restraint was per se unreasonable. It was only after the real estate contract was satisfied and the warranty deed vesting title to the property in the Brashlers had been recorded, that the Brashlers attempted to obtain a loan by executing a deed of trust for the property. After the Brashlers had paid the $15,000 purchase price and recorded the warranty deed, the automatic reverter restraint was, in my view, per se unreasonable and so holding would clarify the law.[1]
¶ 25 Restraints on alienation fall into two categories: direct and indirect. 3 JOHN A. BORRON, JR., SIMES & SMITH: THE LAW OF FUTURE INTERESTS § 1112, at 3 (3d ed. 2004) (SIMES & SMITH). Direct restraints are those provisions in an instrument which, by their terms or implications, "purport[] to prohibit or penalize the exercise of the power of alienation" of property. 3 SIMES & SMITH, supra, § 1112, at 3.
¶ 26 Direct restraints take one of three forms: promissory, disabling, or forfeiture. 3 SIMES & SMITH, supra, § 1131, at 14. A promissory restraint is an agreement by the holder of an interest not to alienate, with contractual liability, if the agreement is breached. A disabling restraint is a provision in the document creating the interest that renders void any attempt to alienate the interest. BLACK'S LAW DICTIONARY 494 (8th ed.2004) (a disabling restraint places "[l]imits on the alienation of property"); cf. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 1.26, at 50 (2d ed.2004) ("restraint [that] is stated in the form of a prohibition; the transferor in some way forbids the transferee from alienating."). A forfeiture restraint is a condition that terminates the fee upon an attempt to alienate. 3 SIMES & SMITH, supra, § 1131, at 14. Such a restraint exists when "an instrument of conveyance provides that if the grantee attempts to alienate, the land shall go to the grantor by way of possibility of reverter or right of entry or to a third person by way of executory interest." 17 STOEBUCK & WEAVER, supra, § 1.26, at 50; see also RESTATEMENT (SECOND) OF PROPERTY § 3.2, at 147 (1983).
¶ 27 The automatic reverter clause here is a direct forfeiture restraint. Although there are no Washington decisions on point, the general rule is that even limited forfeiture restraints that interfere with the alienability of property if unreasonable, are void. 17 STOEBUCK & WEAVER, supra, § 1.26, at 51; 3 SIMES & SMITH, supra, § 1131, at 14.
¶ 28 It is desirable that the law be clear, understandable, and predictable. The reasonableness test embraced by the majority and dissent does not promote predictability. To send every contested restraint to a court hearing to balance the interests sought to be protected by the restraint against the benefits of alienability serves neither clarity nor predictability. I would hold that where, as here, the condition of payment has been satisfied and a warranty deed is transferred and recorded, a direct and automatic reverter upon the attempt to alienate is unreasonable as a matter of law. I therefore respectfully dissent.
NOTES
[1] Susan Alby's uncontested affidavit states:

Because this piece of property had been in the ALBY family for several generations, GENE and I wanted to make sure that the property always stayed in the family. After several discussions with LORRI about what she and her husband, LARRY R. BRASHLER, could afford to pay for the home, my husband GENE and I decided that $15,000.00 was what LORRI and her husband could afford, even though we believed the property and home was of considerably greater valued [sic]. Since we were so concerned about the property staying in the family, we consulted with an attorney... to make a contract with the proper and appropriate language so that LORRI and her husband could not do three things:
1. Sell the property to someone who was not a member of the family;
2. Divide the property in any way; and
3. Encumber the property with a mortgage or deed of trust.
We even told LORRI that we would buy the property back from her and her husband should they ever decide that they did not want it.
My husband GENE ALBY, now deceased, received this property from his mother. His father had received part of this property from his father who immigrated to the United States from Norway. This property has been in the ALBY family for all these generations and for this reason, my husband and I had the [attorney] place the necessary language in the real estate contract and deed that should LORRI and her husband attempt to do any of the above mentioned acts, the property would automatically revert back to us.
CP at 39-40 (emphasis added) (Although neither the contract nor the deed contains restrictions on selling the property to someone who is not a member of the family, the Albys reserved a right of first refusal in the contract).
[2] Because the deed containing the restrictions had been recorded, Banc One had actual or constructive notice of the reversion that was created when the Brashlers mortgaged the property.
[3] Eugene Alby died after the Brashlers purchased the property and before Susan Alby filed this action.
[4] Restraints on alienation of land are used for a variety of legitimate purposes: retaining land in families; preserving affordable housing; furthering conservation, preservation, and charitable purposes to which land is devoted; and facilitating land investment and creating investment opportunities. Potentially harmful consequences that may flow from restraints on alienation include impediments to the operation of a free market in land, limits on the prospects for improvement, development, and redevelopment of land, and limits on the mobility of landowners and would-be purchasers. RESTATEMENT (THIRD) OF PROPERTY § 3.4 cmt. c at 442 (2000).
[1] Because there were cross motions for summary judgment, the parties essentially agreed that there are no material factual disputes.
[2] Over 14 years have elapsed since the relevant language was placed in the real estate contract and deed. Because Susan Alby is now only 66 years of age, the restriction, if not void, could be in effect for many more years.
[1] Assuming that the goal of the Albys was to convey an estate which would keep the whole parcel of land in the family for their life times, there are better ways they could have accomplished this. For example, they could have given the Albys fee simple and retained for themselves a life estate.